IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

KATHARINE H. HENDRICKS,

    Plaintiff,

v.                                                                              No. 21-cv-798 MV/JFR

ALUM FINANCIAL, LLC, and
DEBT PAY PRO,

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Debt Pay, Inc's Motion to Dismiss the Second Amended Complaint [Doc. 41]. The Court, having considered the Motion and relevant law, finds that the Motion is well-taken and will be granted.

### BACKGROUND

The facts as alleged in Plaintiff Katharine Hendricks's Second Amended Class Action Complaint for Damages, Declaratory Relief and Injunctive Relief ("Second Amended Complaint") [Doc. 36] are as follows. Ms. Hendricks, who was struggling with student loan debt, was eligible for loan payment forgiveness under a federal program by virtue of her work as a mental health care professional employed by a nonprofit organization serving Native American communities in Northern New Mexico. *Id.* ¶ 6. Ms. Hendricks submitted her application to the Public Service Loan Forgiveness Program by fax to the United States Department of Education. *Id.* ¶ 8. Shortly thereafter, she began receiving voicemail messages from Defendant Alum Financial LLC ("Alum"), a California company engaged in the business of student loan debt

1

relief. *Id.* ¶¶ 9-14, 2. The messages indicated that Ms. Hendricks was eligible for "the program," but that her application was incomplete, and that she needed to complete the process in a timely manner, as eligibility was on "a first come first served" basis. *Id.* ¶ 14. Ms. Hendricks returned one of the calls, and spoke with an employee of Alum, who represented that Alum "was the agency that people must work through to qualify for these loan consolidation programs." *Id.* ¶ 15. Ms. Hendricks believed that she had to work with Alum to obtain the debt relief that she was seeking. *Id.* ¶ 16. Alum offered Ms. Hendricks a contract, which included a payment plan. *Id.* ¶ 17. When she asked about the payment plan, Alum led her to believe that the plan was for her student loan payments under the consolidation program. *Id.*

In fact, Alum is *not* an agency that applicants must use to qualify for federal student loan consolidation programs, nor was the payment plan offered to Ms. Hendricks a student loan payment plan; rather, it was a plan for payment of Alum's own fees. *Id.* ¶ 18. Further, the contract that Alum offered to Ms. Hendricks was not related to any specific debt relief program for which Ms. Hendricks qualified, but rather was "a contract for services that Alum claims will find all the programs for which a person qualifie[s] and help determine the best option for that person." *Id.* ¶ 19.

Alum collected fees from Ms. Hendricks, pursuant to the payment plan for which it had contracted with her, "before providing any benefit to [her]," and before she was even enrolled in a qualified loan consolidation and forgiveness plan. *Id.* ¶ 20. The contract that Ms. Hendricks signed was a form contract that read, "I hereby authorize Alum Financial (AF) to initiate automatic debits from my bank account or card on file, for the authorized services, fees and terms outlined in my Service Agreement with Alum Financial," and "I [insert name], authorize AF to charge my account on [See Below] for the sole purpose of my student loans." *Id.* ¶¶ 23-24.

Despite this language, "Alum keeps all of the funds paid to it by consumers and no portion of these payments are used to make monthly payments on the student loan or loans." *Id.* ¶ 26.

Alum does not maintain its own customer records, but instead relies on Defendant Debt Pay Pro, a corporation that provides services to debt relief organizations, to "track its customers, its leads, and to otherwise assist it in providing debt relief services to residents of New Mexico," including assisting with "payment processing and lead generation." *Id.* ¶ 27. Specifically, Debt Pay Pro provides assistance "through script writing and automation for telemarketing, text messaging, and email services, providing access to credit reports, providing interactive portals for customers to upload documents, electronically sign documents, [and] check the status of their file," by "tracking all inbound and outbound calls and telephone messages to and from customers and potential customers, tracking customer agreements and signatures, tracking data on type of debt being serviced, and tracking receipt and completeness of customer documents and information for debt relief services." *Id.* ¶¶ 34-35. Debt Pay Pro "knowingly provides this assistance in exchange for payment." *Id.* Debt Pay Pro also provides similar assistance to "some 10,804 users from 2015 companies in offering debt adjustment services to consumers." *Id.* ¶ 29. Without the services provided by Debt Pay Pro, Alum "and these other companies" would not be able to provide debt adjustment services to New Mexico residents." *Id.* ¶ 32.

According to Ms. Hendricks, the services provided by Alum run afoul of the New Mexico statutory provision that makes it unlawful to act as a "debt adjuster." *Id.* ¶ 50 (citing to N.M. Stat. Ann. 56-2-1). Section 56-2-1 defines a "debt adjuster" as a person (which includes an individual, partnership, corporation, or association) "who acts or offers to act for a consideration as an intermediary between a debtor and his creditors for the purpose of settling, compounding or in anywise altering the terms of payment of any debts of the debtor; and, to that end, receives

money or other property from the debtor, or on behalf of the debtor, for payment to, or distribution among the creditors of the debtor." Acting or offering to act as a debt adjuster in New Mexico is a misdemeanor. N.M. Stat. Ann. § 56-2-2. The attorney general may bring an action to enjoin a person from acting or offering to act as a debt adjuster. N.M. Stat. Ann. § 56-2-3. There is, however, no statutory provision allowing for a private right of action against a person who acts or offers to act as a debt adjuster.

Based on the allegations outlined above, in the Second Amended Complaint, Ms. Hendricks sets forth three claims for relief: one claim against both Alum and Debt Pay Pro for violation of the New Mexico Unfair Practices Act ("UPA"); one claim against both Alum and Debt Pay Pro for violation of the Telephone Consumer Protection Act ("TCPA"); and one claim against Debt Pay Pro alone for violation of the UPA. Doc. 36 at 8-11. Debt Pay Pro filed a motion to dismiss for failure to state the three claims against it, along with a brief in support. Docs. 41, 42. In her response brief, Ms. Hendricks concedes that she cannot state a claim under the TCPA against Debt Pay Pro and agrees to dismissal of that claim as against Debt Pay Pro. Ms. Hendricks argues, however, that her UPA claims against Debt Pay Pro are viable. Debt Pay Pro's request for dismissal of the two UPA claims as asserted against it is now before the Court.

## STANDARD

Under Rule 12(b)(6), the Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). When considering a Rule 12(b)(6) motion, the Court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the plaintiff, and draw all reasonable inferences in the

plaintiff's favor. *Smith v. United States*, 561 F.3d 1090, 1097 (10th Cir. 2009), *cert. denied*, 130 S. Ct. 1142 (2010).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

The Court in *Iqbal* identified "two working principles" in the context of a motion to dismiss. *Id.* First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Accordingly, Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *see Twombly*, 550 U.S. at 570 (holding that a plaintiff must "nudge" her claims "across the line from conceivable to plausible"). Accordingly, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id.* (citation omitted).

In keeping with these two principles, the Court explained,

> a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.   When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."

5

*Id.* at 679.

## DISCUSSION

Ms. Hendricks seeks to hold Debt Pay Pro liable under the UPA for engaging in both "[u]nfair or deceptive trade practice[]s" and "unconscionable trade practice[s]" in violation of the UPA. N.M. Stat. Ann. § 57-12-2(D); § 57-12-2(E). Ms. Hendricks's theory of liability against Debt Pay Pro is one of aiding and abetting. Specifically, Ms. Hendricks asserts that because Alum (and other similar companies) engaged in the unlawful practice of debt adjusting, their "representations, actions, inactions and omissions, including the false impression that [they] could legally offer their services to residents of New Mexico," constitute unfair trade practices and unconscionable trade practices in violation of the UPA. Doc. 36 ¶¶ 50-53; 64-67. And because Debt Pay Pro "provided substantial assistance and aided and abetted" Alum and the other companies in violating their statutory duties under the UPA, Debt Pay Pro is equally liable for those violations. *Id.* ¶¶ 56, 70.

As an initial matter, Debt Pay Pro argues that Ms. Hendricks's claim fails because her allegations are insufficient to demonstrate that Alum unlawfully acted as a debt adjuster in the first instance. Doc. 51 at 3-5. Specifically, Debt Pay Pro highlights the language in § 56-2-1 indicating that, in order to be a debt adjuster, one must "act[] or offer[] to act for a consideration as **an intermediary between a debtor and his creditors** for the purpose of settling, compounding or in anywise altering the terms of payment of any debts of the debtor." *Id.* at 3 (quoting § 56-2-1). According to Debt Pay Pro, Ms. Hendricks's allegations do not amount to factual assertions that Alum acted as "an intermediary" between her and her creditors. *Id.* at 4. Rather, Debt Pay Pro contends, Ms. Hendricks "merely alleges that Alum helps its customers to find consolidation programs that fit its customers' needs." *Id.* (quoting the following from the

Second Amended Complaint: "Alum's contract and conduct is not premised on the particular program for which an individual with student loan debt qualifies but is instead a contract for service that Alum claims will find all programs for which a person qualifies and helps determine the best option for that person").

Accepting Debt Pay Pro's definition of an intermediary as "a mediator or go-between; a third-party negotiator," *id.* at 3, the Court does not agree that Ms. Hendricks's allegations are insufficient to establish, if proven, that Alum acted or offered to act as an intermediary between her and her student loan creditors. Ms. Hendricks alleges that an employee from Alum represented to her that Alum "was the agency that people must work through" to qualify for a loan consolidation program. In terms of the payment plan to which Ms. Hendricks agreed, she alleges that Alum led her to believe that she would be paying Alum, who would then make her loan payments under the loan consolidation program that Alum secured for her. Further, Ms. Hendricks alleges that the contract she ultimately signed indicated that she was authorizing Alum to deduct money from her bank account "for the sole purpose of [her] student loans." Admittedly, Ms. Hendricks goes on to allege that, despite Alum's representations and intimations, in actuality, the plan it offered to Ms. Hendricks was for payment of Alum's own fees, the contract into which she entered was not for payment of her student loans but instead for payment for services for finding loan consolidation programs, and the money deducted from her account went to Alum, not toward her student loan repayment. But to be a debt adjuster, a person need not in actuality act as an intermediary; it is sufficient that a person offers to act as an intermediary. And this is precisely what Ms. Hendricks alleges Alum did in leading her to believe that Alum was the agency through which she needed to work, both to be eligible for a loan consolidation program and to make her payments under that program, and that she was

7

contracting with Alum "for the sole purpose of [her] student loans." Read together, the allegations in the Second Amended Complaint contain sufficient factual matter from which the reasonable inference can be drawn that Alum meets the definition of a debt adjuster under § 56-2-1.

Next, Debt Pay Pro contends that Ms. Hendricks's claims against it fail because, while "New Mexico allows causes of action for aiding and abetting tortious conduct," aiding and abetting liability does not extend to "alleged statutory violations," including violations of the UPA. Doc. 51 at 6-7. In support of this contention, Debt Pay Pro cites to only one case, *S & H Dev., LLC v. Parker*, No. 34,647, 2017 WL 3485065 (N.M. Ct. App. July 11, 2017). But the specific, and inapposite, issue addressed in *S & H* was whether a private right of action exists under the Construction Industries Licensing Act ("CILA"). *Id.* at *4-5. The CILA provides that a licensee who, *inter alia*, "aid[s], abet[s], combin[es] or conspir[es] with a person to evade or violate" the CILA will have their license revoked or suspended by the construction industries commission, and may also be assessed an administrative penalty. *See* § 60-12-23. In *S & H*, the court rejected the plaintiff's argument that a private right of action under the CILA exists by virtue of this language, finding "no basis on which to imply a private right of action" under the CILA. 2017 WL 3485065, at *5. In contrast here, the issue is not whether there is a private right of action under the UPA, which Debt Pay Pro does not contest, but rather whether that private right of action extends to one who aids and abets a violation of the provisions thereunder by another entity. The Court has found no authority as to whether, under New Mexico law, liability under the UPA can be established under such an aiding and abetting theory. The Court, however, need not decide this issue as, assuming *arguendo* that such a theory of liability is available, Ms. Hendricks's allegations are insufficient to establish the necessary factual basis to establish that

Debt Pay Pro aided and abetted Alum's alleged breach of its statutory duties under the UPA.

To state a claim for aiding and abetting a breach of duty, a plaintiff must allege that: (1) someone who owed a duty to the plaintiff breached that duty; (2) the defendant "knew of such a duty"; (3) the defendant "intentionally provided substantial assistance or encouragement to [the person who breached a duty] to commit an act which the defendant knew to be a breach of duty"; and (4) "damages to the plaintiff were caused thereby." *GCM, Inc. v. Kentucky Cent. Life Ins. Co*, 947 P.2d 143, 148 (N.M. 1997). As to the first element, Ms. Hendricks alleges that Alum owed her a statutory duty under the UPA, and that Alum breached that duty by engaging in both "unfair or deceptive trade practices" and "unconscionable trade practices." To state a claim for unfair or deceptive trade practices, a plaintiff must allege, *inter alia*, that the party charged "knowingly made" a "false or misleading oral or written statement, visual description or other representation." N.M. Stat. Ann. § 57-12-2(D). To state a claim for unconscionable trade practices, a plaintiff must allege, *inter alia*, that the party charged engaged in "an act or practice" that "takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree," or "results in a gross disparity between the value received by a person and the price paid." N.M. Stat. Ann. § 57-12-2(E). Here, Ms. Hendricks alleges that Alum made false and/or misleading representations, thereby engaging in unfair or deceptive trade practices, by: implying that its business is lawful and proper (which, by virtue of the statutory prohibition on debt adjusting, it is not); leaving messages implying that, in order to participate in the federal loan forgiveness program, she needed to complete an application with Alum (which she did not); representing that it was the agency through which people must work in order to qualify for loan consolidation (which it was not); and representing that its payment plan was for her student loan payments (which it was not). Ms. Hendricks further alleges that Alum engaged in

9

unconscionable trade practices by contracting with Ms. Hendricks to provide services that it could not lawfully provide, taking fees for those services, and keeping those fees without providing the services that Alum led Ms. Hendricks to believe it was providing to her.

Assuming *arguendo* that these allegations, if proven, would establish that Alum breached its duties under the relevant provisions of the UPA, thus satisfying the first element of aiding and abetting liability, the Second Amended Complaint is nonetheless devoid of factual allegations that, if proven, would establish the third element of aiding and abetting liability, namely that Debt Pay Pro "intentionally provided substantial assistance or encouragement" to Alum in connection with the false and misleading representations that Alum made to Ms. Hendricks, or in connection with conceiving, negotiating, or executing the terms of the unconscionable contract between Alum and Ms. Hendricks. Ms. Hendricks alleges in conclusory fashion that Debt Pay Pro "provided substantial assistance and aided and abetted in the violation of the UPA" committed by Alum and other unidentified debt adjusters. Doc. 36 ¶¶ 56, 70. But beyond this conclusory allegation, Ms. Hendricks does not allege any facts from which the reasonable inference can be drawn that Debt Pay Pro assisted or encouraged Alum in the conduct identified by Ms. Hendricks as unfair, deceptive, and/or unconscionable trade practices. The Second Amended Complaint includes the following list of services that Debt Pay Pro provided to Alum in "exchange for payment": tracking customers and leads; assisting with payment processing and lead generation; script writing and automation for telemarketing, text messaging, and email services; providing access to credit reports; providing interactive portals for customers to upload documents, electronically sign documents, and check the status of their file; tracking all inbound and outbound calls and telephone messages to and from customers and potential customers; tracking customer agreements and signatures; tracking data on type of debt being serviced; and

tracking receipt and completeness of customer documents and information for debt relief services. None of these services relates to the acts and practices undertaken by Alum that Ms. Hendricks identifies as violative of the UPA, namely, the preparation and transmission of false and misleading statements and the drafting, negotiation, and execution of an unconscionable contract. Indeed, while Ms. Hendricks alleges that Debt Pay Pro knew or should have known that the debt adjustment services offered by Alum and other similar entities were unlawful, she does not equally allege that Debt Pay Pro had any knowledge of, much less any involvement in, the acts and practices that constitute Alum's alleged breach of the UPA. In other words, while Ms. Hendricks alleges that Debt Pay Pro "knew of [Alum's] unlawful operations" but nonetheless "knowingly provided assistance in exchange for payment," she does not equally allege that Debt Pay Pro knew of Alum's UPA violations, or that Debt Pay Pro provided substantial assistance or encouragement to Alum (or any other entity) in any UPA-breaching conduct. Accordingly, Ms. Hendricks's allegations, if proven, would fail to establish the third element of aiding and abetting liability and, for this reason, fail to state a claim against Debt Pay Pro for violating the UPA. *See Barrett v. Apple Inc.*, 523 F. Supp. 3d 1132 (N.D. Cal. 2021) (dismissing state statutory claims of unfair competition and false advertising against Apple for aiding and abetting perpetrators of a gift card scam where the allegations failed to establish that Apple "reach[ed] a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act"); *Kenneally v. Bank of Nova Scotia*, 711 F. Supp. 2d 1174, 1193 (S.D. Cal. 2010) (granting motion to dismiss state statutory claims of unfair competition and false advertising where the complaint "fail[ed] to adequately allege that the Lenders knew that Bosa's conduct constituted a breach of a duty and gave substantial assistance or encouragement to Bosa to so act" and also "fail[ed] to adequately allege that the Lenders played a part in preparing or

transmitting the allegedly false or misleading statements"); *Schultz v. Neovi Data Corp.*, 152 Cal. App. 4th 86 (2007) (holding that allegations that PayPal "knew the site was an illegal lottery but agreed EZ could use its payment system with the knowing intent to aid and abet EZ's operation because it could be profitable for PayPal," and that Neovi 'knew of [EZ]'s unlawful operations' 'but knowingly and intentionally aided and abetted the operation by setting up a system' for consumers to use its electronic check system and, as a result, received a fee," did not "sufficiently allege Pay PayPal's or Neovi's knowledge of the alleged illegal lottery or facts showing 'substantial assistance or encouragement'"); *Emery v. Visa Int'l Serv. Ass'n*, 95 Cal. App. 4th 952, 960 (2002) (holding that because the defendant "played no part in preparing or sending any "statement" that might be construed as untrue or misleading under the unfair business practices statute," there could be "no civil liability for unfair practices"). Ms. Hendricks's two UPA claims thus must be dismissed as against Debt Pay Pro.

## CONCLUSION

Ms. Hendricks consents to dismissal of her TCPA claim against Debt Pay Pro. For the reasons set forth herein, Ms. Hendricks has failed to state a claim under the UPA against Debt Pay Pro. Accordingly, Ms. Hendricks's TCPA and UPA claims, to the extent that they are alleged against Debt Pay Pro, must be dismissed.

**IT IS THEREFORE ORDERED** that Debt Pay, Inc's Motion to Dismiss the Second Amended Complaint [Doc. 41] is GRANTED, as follows: the Second Amended Complaint is dismissed as to Debt Pay Pro.

DATED this 12th day of September 2024.

_____
MARTHA VÁZQUEZ
Senior United States District Judge