IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

KATHARINE H. HENDRICKS,

      Plaintiff,

v.                                                     No. 21-cv-00798 MV/JFR

ALUM FINANCIAL, LLC, and
DEBT PAY PRO,

      Defendants.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**THIS MATTER** is before the Court on Plaintiff's *Motion to Enforce Settlement*

*Agreement* ("*Motion*" or "*Motion to Enforce*") filed December 20, 2024 (Doc. 72) and District

Judge Martha Vásquez's *Order of Reference*[1] filed December 23, 2024 (Doc. 73).  Defendants

did not file a response.  Having reviewed the *Motion*, exhibits submitted by Plaintiff, and the

relevant authorities, the Court finds that an evidentiary hearing is unnecessary for its

determination.  Finding the *Motion* to be well taken, the Court recommends that it be

**GRANTED**.

## I.   PROCEDURAL BACKGROUND

On June 16, 2021, Plaintiff filed suit against Defendants Alum Financial, LLC ("Alum")

and Debt Pay Pro in the First Judicial District for the County of Santa Fe, New Mexico.  Doc. 1

at ¶ 1.  Defendants timely removed the case to this Court.  *See* Doc. 1.  Plaintiff's *Second*

*Amended Class Action Complaint* raises three claims and seeks damages, declaratory relief, and

---

[1] In accordance with 28 U.S.C. §§ 636(b)(1)(B), (b)(3), and *Va. Beach Fed. Sav. & Loan Ass'n v. Wood*, 901 F.2d 849 (10th Cir. 1990), United States District Judge Martha Vázquez entered an *Order of Reference* referring this case to the undersigned to conduct hearings, if warranted, including evidentiary hearings and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case.  Doc. 73.

injunctive relief.  Doc. 36.  On September 12, 2024, Judge Vázquez granted Defendant Debt Pay

Pro's *Motion to Dismiss* (Doc. 41), thereby making Defendant Alum the sole remaining

defendant.  Doc. 59.

   What remains at issue is Defendant Alum's trade practices in the course of offering

services as a for-profit student loan debt relief organization.  *Id.* at 1.  More specifically, this case

arises from a loan dispute regarding Plaintiff's eligibility for loan payment forgiveness under a

federal program by virtue of her work as a mental health care professional employed by a

nonprofit organization serving Native American communities in Northern New Mexico.  Doc. 36

at ¶ 6.  After submitting an application to the Public Service Loan Forgiveness Program by fax to

the United States Department of Education, Plaintiff began receiving voicemails from Defendant

Alum, who represented itself as the agency that people must work through to qualify for federal

loan consolidation programs.  *Id.* at ¶ 15.  As a result of Defendant Alum's representations,

Plaintiff signed a contract believing that it was necessary for obtaining the debt relief she sought

through the consolidation program.  *Id.* at ¶ 16.

   In actuality, Defendant Alum is *not* an agency that applicants must use to qualify for

federal student loan consolidation programs, nor was the payment plan offered to Plaintiff a

student loan payment plan.  *Id.* at ¶ 19.  Rather, it was a plan for payment of Alum's own fees.

*Id.*  Defendant Alum collected fees from Plaintiff before providing any benefit to Plaintiff and

before Plaintiff was enrolled in a qualified loan consolidation and forgiveness plan.  *Id.* at ¶ 20.

The contract that Plaintiff signed was a form contract that read, "I hereby authorize Alum

Financial (AF) to initiate automatic debits from my bank account or card on file, for the

authorized services, fees and terms outlined in my Service Agreement with Alum Financial," and

"I [insert name], *authorize* AF to charge my account on [see below] *for the sole purpose of my*

*student loans.*" *Id.* at ¶¶ 23-24 (emphasis added).  Despite this language, Defendant Alum keeps all the funds it receives from consumers and no portion of those payments are used to make monthly payments on the student loan(s).  *Id.* at ¶ 26.

In light of Judge Vázquez's *Memorandum Opinion and Order* (Doc. 59), the Court held a Status Conference on October 29, 2024, to discuss the status of the case and reestablish case management deadlines.  Doc. 68; *see also* Doc. 69.  At this Status Conference, counsel reported that the parties agreed to settle all claims and were in the process of finalizing the paperwork.  Doc. 69.  Therefore, in lieu of scheduling a Settlement Conference, the Court ordered the parties to submit closing documents within thirty days, absent the need and request for an extension of time to do so.  *Id.*

On November 25, 2024, Plaintiff filed notice that Defendant Alum had not yet performed its payment obligation under the settlement agreement and therefore anticipated filing a motion to enforce.  Doc. 70.  The Court accordingly extended the deadline for closing documents.  Doc. 71.  Due to Defendant Alum's continued failure to execute the settlement agreement, Plaintiff filed a *Motion to Enforce Settlement Agreement* on December 23, 2024.  Doc. 72.  Defendant Alum did not file a response.

## II.  RELEVANT FACTUAL BACKGROUND

In October 2024, Defendant Alum and Plaintiff reached a settlement, as reflected in the written memorialization of the agreement (Doc. 72-2) executed by Plaintiff (Doc. 72-1), the emails exchanged between counsel (Docs. 72-1, 72-3), and counsel's representation to the Court (Doc. 69).  The Settlement Agreement contains a confidentiality provision as to the amount to be paid to Plaintiff, but that specific sum is set forth in an unredacted copy of the agreement available only to the parties.  Doc. 72-2 at ¶¶ 1(a)(i), 5.  The general terms of the Settlement

Agreement involve Defendant Alum paying Plaintiff a specified sum of money upon execution of the written memorialization of the settlement agreement.

In October and November 2024, Plaintiff's counsel (Robert David Humphreys) and Defendant Alum's counsel (Brent R. Phillips) exchanged multiple emails regarding the Settlement Agreement. *See generally* Docs. 72-1, 72-3. On October 15, 2024, Plaintiff's counsel emailed Defendant Alum's counsel stating "Attached are wiring instructions and HWH W9 form. Please let us know if there are any needed edits to settlement agreement. I am researching now whether we need to get permission from the Court to dismiss the class action and settle this case on an individual basis." Doc. 72-3 at 4. Defendant Alum's counsel did not reply. *See id.* Plaintiff's counsel followed up on October 18, 2024, at 9:41 a.m., asking "Do you have any edits to the Settlement agreement?" Doc. 72-1. That day, at 12:05 p.m., Defendant Alum's counsel replied, stating "I am fine with the settlement agreement. I will get it signed and returned." *Id.*

On October 21, 2024, Plaintiff's counsel followed up again and exchanged multiple emails that day. Of note, Plaintiff's counsel asked "Do you have any objection to our side reporting that the matter has been tentatively resolved, pending funding?" to which Defendant Alum's counsel responded, "I have no objection to you filing a notice of settlement." Doc. 72-3 at 3. When Plaintiff's counsel later inquired about when Defendant Alum would write transfer the funds allotted in the Settlement Agreement, Defendant Alum's counsel stated, "I just followed up [with Alum] for the information. I will email you once I receive a response." Doc. 72-3 at 2-3. That was the last email from Defendant Alum's counsel.

On October 29, 2024, the Court held a Status Conference. Robert David Humphreys appeared on behalf of Plaintiff and Brent R. Phillips appeared on behalf of Defendant Alum—the

same attorneys exchanging the aforementioned emails.  Doc. 69.  Both attorneys reported that

the parties agreed to settle all claims and were in the process of finalizing the paperwork.  *Id.*

Having heard this information, the Court ordered the parties to submit closing documents within

thirty days, absent the need and request for an extension of time to do so.  *Id.*  As that thirty-day

deadline neared, Plaintiff's counsel sent another follow-up email on November 22, 2024, stating

"attached please find the settlement agreement signed by our client."  Doc. 72-3 at 2.  Defendant

Alum's counsel did not reply.  *Id.*

### III. LEGAL STANDARD

**A.  District Court's Authority to Enforce a Settlement Agreement and Whether an
Evidentiary Hearing Is Required**

"A trial court has the power to summarily enforce a settlement agreement entered into by

the litigants while the litigant is pending before it."  *U.S. v. Hardage*, 982 F.2d 1491, 1496 (10th

Cir. 1993).  The Tenth Circuit reviews a district court's use of such authority only for abuse of

discretion.  *See id.* at 1495.  On a motion to enforce a settlement agreement, the Tenth Circuit,

like many of the other federal circuit courts of appeal, has typically required an evidentiary

hearing only "where material facts concerning the existence or terms of an agreement to settle

are in dispute."  *Id.* at 1496 (collecting cases from the Third, Fourth, Fifth, Sixth, Eighth, Ninth,

and D.C. Circuit Courts of Appeal); *Devon Energy Prod. Co., v. Line Finders, LLC*, No. 21-

6119, 2022 WL 4232404, at \*5-6 (10th Cir. Sept. 14, 2022) (explaining that *Hardage* required an

evidentiary hearing only because the *counsel for the respective parties provided conflicting

representations* on the existence of a settlement and finding that because the present case had no

such dispute, no evidentiary hearing was required).  Only when such a dispute exists, must the

Court's decision to enforce a settlement agreement rely on a factual development that consists of

sworn testimony subject to cross-examination, sworn affidavits, and legal memoranda.  *Applied Cap., Inc. v. Gibson*, No. 05-98, 2007 WL 5685131, at *10 (D.N.M. Sept. 27, 2007) (citing *Hardage*, 982 F.2d at 1496-97); *Payne v. Tri-State Careflight, LLC*, No. 14-1044, 2016 WL 5376321, at *10 (D.N.M. Aug. 17, 2016).

### B.  Whether a Contract Was Formed Under New Mexico Law

Because settlement agreements are contracts, *Republic Res. Corp. v. ISI Petroleum W. Caddo Drilling Program 1981*, 836 F.2d 462, 465 (10th Cir. 1987), issues involving the formation, construction, and enforceability of a settlement agreement are resolved by applying state contract law.  *Walters v. Wal-Mart Stores, Inc.*, 703 F.3d 1167, 1172 (10th Cir. 2013) (citing *Shoels v. Klebold*, 375 F.3d 1054, 1060 (10th Cir. 2004)); *United States v. McCall*, 235 F.3d 1211, 1215 (10th Cir. 2000).

Under New Mexico law, a legally formed contract "must be factually supported by an offer, an acceptance, consideration, and mutual assent" by the parties to the material terms of the contract.  *Hendrickson v. AFSCME Council 18*, 992 F.3d 950, 959 (10th Cir. 2021) (quoting *Garcia v. Middle Rio Grande Conservancy Dist.*, 1996-NMSC-029, ¶ 9, 121 N.M. 728, 731, 918 P.2d 7, 10); *Whitaker v. Becerra*, No. 18-cv-1046, 2021 WL 5122067, at *3 (D.N.M. Nov. 4, 2021); *see also* N.M. U.J.I. 13-801 ("[F]or a promise . . . to be legally enforceable, there must be an offer, an acceptance, consideration, and mutual assent.").  New Mexico's Uniform Jury Instructions further define each of these four requirements.  "An offer is a communication of a willingness to enter into a contract," N.M. U.J.I. 13-805, and "[a]n acceptance is a statement or conduct" by the offeree showing the offeree's agreement to the offer's terms.  N.M. U.J.I. 13-807.  Consideration is any "benefit or advantage" to the offeror, or "any loss or detriment" to the offeree "which was a reason for [the offeror] to enter into the contact."  N.M. U.J.I. 13-814.

Lastly, "[m]utual assent requires a showing of agreement by the parties to the material terms of the contract." N.M. U.J.I. 13-816.

In analyzing whether a contract was formed, no single factor is decisive. *Bird v. Regents of N.M. State Uni.*, No. 08-851, 2011 WL 13077831, at *2 (D.N.M. Jan. 24, 2011) (citing *Talbott v. Roswell Hosp. Corp.*, 2005-NMCA-109, ¶ 13, 138 N.M. 189, 192-93, 118 P.3d 194, 197-98). Instead, "courts must consider the attributes of contractual relationships in light of the dealings between the parties as a whole, to determine whether a contract existed." *Id.*

New Mexico public policy favors settlement agreements. *See Applied Cap. Inc.*, 2007 WL 5685131, at *9 (citing *Herrera v. Herrera*, 1999-NMCA-034, ¶ 17, 126 N.M. 705, 708-10, 974 P.2d 675, 678-80. Accordingly, the New Mexico Supreme Court has held that a "a party can be considered bound by a settlement even if certain details are not worked out, if such details are not essential to the proposal" or if such details do not "change . . . the terms or purpose to be accomplished by the settlement." *Jones v. United Mins. Corp.*, 1979-NMSC-103, ¶ 13, 93 N.M. 706, 708, 604 P.2d 1240, 1242. In the absence of mutual mistake of fact, fraud, failure to express the agreement of the parties, or material breach by the other party, an agreement to settle may not be rescinded. *Rojo v. Loeper Landscaping, Inc.*, 1988-NMSC-065, ¶ 10, 107 N.M. 407, 410, 759 P.2d 194, 197.

## IV. <u>ANALYSIS</u>

### A. <u>This Court Has Jurisdiction and an Evidentiary Hearing Is Not Required</u>

At the outset, this Court has jurisdiction to determine whether to conduct an evidentiary hearing and/or enforce the settlement agreement because this case is still pending before the Court. *Hardage*, 982 F.2d at 1496. Further, an evidentiary hearing is not required because there is no dispute as to whether the settlement agreement exists or its terms. *Id.* at 1495. First,

Plaintiff failed to file a response. Pursuant to D.N.M.LR-Civ.7.1(b), a party's failure to respond constitutes consent to grant the motion. *See* Proposed Findings & Recommended Disposition at 1-2, *Castillo v. Ford Motor Co.*, No. 12-0514, 2013 WL 1010291 (D.N.M. Mar. 4, 2013) (Doc. 29). Because there has been no response, the facts are undisputed and only the application of the law to those facts is at issue. *Id.* at 3 (citing *Gomez v. Jones-Wilson*, 2013-NMCA-007, 294 P.3d 1269). Second, counsel for both parties mutually represented to the Court that a settlement had been reached and that the paperwork was being finalized. Doc. 69. Third, attached to Plaintiff's *Motion* are multiple (undisputed) emails between Plaintiff's counsel and Defendant Alum's counsel which show that the parties undeniably recognized the existence of the contract and agreed to its terms. Docs. 72-1, 72-3.

### B. The Settlement Agreement Is a Legally Binding Contract Under New Mexico Law

Issues involving the enforceability of a settlement agreement are resolved by applying state contract law. *Walters*, 703 F.3d at 1172. Therefore, the Court must review the Settlement Agreement under New Mexico law. *See Hendrickson*, 992 F.3d at 959. Here, the settlement agreement meets each of the four elements for formation pursuant to New Mexico contract law. *See Garcia*, 918 P.2d at 10.

First, Plaintiff made an offer to Defendant Alum. The email from Plaintiff's counsel to Defendant Alum's Counsel on October 15, 2024, stating "Please let us know if there are any needed edits to the settlement agreement," (Doc. 72-1) was "a communication of willingness to enter into a contract." N.M. U.J.I. 13-805. Before turning to the second element, it is important to note that an offer can only be unconditionally accepted if it establishes the essential terms. *Clark v. N.M. Dep't of Homeland Sec. & Emergency Mgmt.*, No. A-1-CA-35143, 2017 WL 6997272, at *8 (N.M. Ct. App. Dec. 7, 2017) (citing *Jones*, 1979-NMSC-103, ¶ 13). Here, the

Settlement Agreement (Doc. 72-2) clearly and unambiguously includes the essential terms; it is

not particularly complicated and does not require uniquely extra care.  *Id.* at *8 (discussing

factors to consider in deciding whether essential terms are present and citing case law where a

lack of price and delivery terms preempted unconditional acceptance of an offer).  The

Settlement Agreement sets forth the material terms as follows: a confidential sum (price) to be

paid (delivered) to Plaintiff after receipt of the executed Agreement.  Doc. 72-2 at ¶ 1.

Second, Defendant Alum made a valid and unequivocal acceptance to all of the terms of

Plaintiff's offer.  Defendant Alum's counsel manifested this acceptance by stating "I am fine

with the settlement agreement" in his October 18th email.  Doc. 72-1.  This valid acceptance also

impliedly accepted all essential terms as they were, seeing as this acceptance was made in

response to Plaintiff's question of whether Defendant Alum wanted to make "any edits to the

settlement agreement."  Doc. 72-1.  An attorney's acceptance of an offer to settle a dispute via

email is sufficient to form a valid, enforceable settlement agreement.  *See* Memorandum Opinion

& Order Enforcing Settlement Agreement at 2, *Martin v. N.M. Pub. Def. Dep't*, No. 09-CV-879,

2010 WL 11627244 (D.N.M. Jan. 29, 2010) (Doc. 44) (enforcing a settlement agreement that

plaintiff refused to sign after he accepted by stating "Sounds okay – Thanks" via his blackberry

phone).  Although Defendant has now failed to execute the contract, that does not change the

valid and unequivocal acceptance previously made.  *Mathia v. Comm'r of Internal Revenue*, 669

F.3d 1080, 1087 n.6 (10th Cir. 2012) (explaining that reaching a settlement agreement is not

excluded to when the contract is executed, but rather "[a] settlement agreement may be reached

through offer and acceptance made by letter, or even verbally.");  *Clark*, 2017 WL 6997272, at *8

("As in *Jones*, Defendants' failure to obtain one of the purportedly necessary signatures does not

change the terms or purpose to be accomplished by the settlement offer.").  Because the emailed

acceptance was valid, unequivocal, and unconditional, the contract is legally binding. *Grindstaff v. Donley*, No. 09-709, 2011 WL 13289667 (D.N.M. Feb. 11, 2011) (attorney's email constituted an acceptance, which resulted in a binding and legally enforceable settlement contract).

Third, the Settlement Agreement has consideration from both parties. Specifically, Plaintiff's consideration, the release of all claims, in exchange for Defendant Alum's consideration, a confidential amount of money. *See* Doc. 72-2 at ¶¶ 1-3, 13. In other words, the "loss or detriment" to the offeree, Defendant Alum, is "a reason for" the offeror, Plaintiff, "to enter into the contract." N.M. U.J.I. 13-814.

Fourth, the parties objectively manifested mutual assent. "Mutual assent is based on objective evidence, not the private, undisclosed thoughts of the parties." *Pope v. Gap, Inc.*, 1998-NMCA-103, ¶ 13, 125 N.M. 376, 380, 961 P.2d 1283, 1287. Objective manifestation of mutual assent "can be inferred from external indications reflecting thoughts and intentions of the parties which show a 'meeting of the minds.'" *Trujillo v. Ronk*, No. 13-1001, 2015 WL 13662896 at *3 (D.N.M. July 1, 2015). Counsel's email exchanges (Docs. 72-1, 72-3) and mutual representation of settlement made to the Court (*see* Doc. 69), as well as Plaintiff's execution of the Settlement Agreement (Docs. 72-2 at 6, 72-3 at 2) all attest to the parties' shared understanding and intention to be bound by the terms of the contract.

## V. <u>RECOMMENDATION</u>

For all the foregoing reasons, the Court finds that Plaintiff and Defendant entered into a binding and legally enforceable contract. The Court therefore finds that Plaintiff's *Motion to Enforce* is well taken and recommends that the *Motion* be **GRANTED**.

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

**JOHN F. ROBBENHAAR**
**United States Magistrate Judge**