**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**


**KATHARINE H. HENDRICKS,**

> **Plaintiff,**

> v.                                                              **No. 21-cv-00798 MV/JFR**

**ALUM FINANCIAL, LLC, and
DEBT PAY PRO,**

> **Defendants.**


**<u>MAGISTRATE JUDGE'S PROPOSED FINDINGS
AND RECOMMENDED DISPOSITION</u>[1]**

**THIS MATTER** is before the Court on the *Motion for Attorney Fees as a Sanction*, filed

by Plaintiff Katharine H. Hendricks ("Plaintiff") on December 8, 2025.  Doc. 99; *see also* Doc.

100 (Supplemental Brief Regarding Attorney Fees as a Sanction).  Although Defendant Alum

Financial, LLC ("Defendant Alum"[2]) initially failed to timely respond, the Court *sua sponte* reset

the Response and Reply deadlines, Doc. 102, after counsel entered an appearance for Defendant

Alum on January 9, 2026, Doc. 101.  Accordingly, Defendant Alum responded on January 26,

2026, Doc. 104, and Plaintiff replied on February 5, 2026, Doc. 105.

The undersigned, having reviewed the record and relevant law, **RECOMMENDS** that

Plaintiff's *Motion for Attorney Fees as a Sanction* (Doc. 99) be **GRANTED IN PART**.

---

[1] In accordance with 28 U.S.C. §§ 636(b)(1)(B), (b)(3), and *Va. Beach Fed. Sav. & Loan Ass'n v. Wood*, 901 F.2d 849 (10th Cir. 1990), United States District Judge Martha Vázquez referred Plaintiff's *Motion for Attorney Fees as a Sanction* (Doc. 99) on January 13, 2026, to the undersigned to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition.  Doc. 103.

[2] To clarify, the Court will refer to Alum Financial, LLC as "Defendant Alum" with respect to its participation in this matter, and as the "LLC" with respect to its general existence as an entity.

Specifically, the undersigned recommends holding Defendant Alum, Jody "Joe" Burwell,[3] and Andrew Burwell jointly and severally liable for $10,600.00 in attorney's fees and $867.88 in New Mexico Gross Receipts Tax as a compensatory sanction pursuant to the Court's inherent authority.

## I.   RELEVANT FACTUAL BACKGROUND

### A.  The Facts Underlying This Case

As alleged in the Second Amended Class Action Complaint for Damages, Declaratory Relief and Injunctive Relief (Doc. 36), this case arises from a loan dispute regarding Plaintiff's eligibility for loan payment forgiveness under a federal program by virtue of her work as a mental health care professional employed by a nonprofit organization serving Native American communities in Northern New Mexico.  Doc. 36 at 2 ¶ 6.  After applying to the Public Service Loan Forgiveness Program by fax to the United States Department of Education, Plaintiff began receiving voicemails in late February or early March 2021, *see id.* at 3 ¶ 9-10, 14, from Defendant Alum, *id.* at 3 ¶ 14, which represented itself as the agency that people must work through to qualify for federal loan consolidation programs, *id.* at 3-4 ¶ 15.  As a result of Defendant Alum's representations, Plaintiff signed a contract believing it was necessary to obtain the debt relief she sought through the consolidation program.  *See id.* at 4 ¶¶ 16-17, 21-22.

However, Defendant Alum was *not* an agency that applicants must use to qualify for federal student loan consolidation programs, nor was the payment plan offered to Plaintiff a student loan payment plan.  *Id.* at ¶ 18; *see also id.* at 5 ¶ 25.  Rather, it was a plan for payment

---

[3] The record refers to this individual by two names.  At his deposition, Andrew Burwell identified the other officer of Alum Financial LLC as "Jody Burwell, [his] father."  Doc. 100 at 9 (Ex. A (Deposition Transcript) at 5:11-14).  Plaintiff's counsel likewise identified him as Jody "Joe" Burwell in the Certificate of Service on the Supplemental Brief.  Doc. 100 at 5.  The Statement of Information filed with the California Secretary of State, however, listed the LLC member as "Joe Burwell," Doc. 105-1, and Defendant Alum's own Response also uses "Joe Burwell," Doc. 104.  The Court uses the name "Jody," except as quoted or referring to which name was listed on forms.

of Defendant Alum's own fees.  *Id.* at 5 ¶ 25.  Defendant Alum collected fees from Plaintiff before providing any benefit to Plaintiff and before Plaintiff was enrolled in a qualified loan consolidation and forgiveness plan.  *Id.* at 4 ¶ 20.  Despite the language of the contract "authoriz[ing] [Defendant Alum] to charge [Plaintiff's] account . . . for the sole purpose of [her] student loans," *id.* at 5 ¶ 24, Defendant Alum kept all the funds it received from consumers, and no portion of those payments were used to make monthly payments on student loans.  *Id.* at ¶ 26.

### B.  <u>The Limited Liability Company</u>

Defendant Alum is a California Limited Liability Company ("LLC"), whose Articles of Organization were registered with the California Secretary of State on January 24, 2019.  Doc. 105-2 at 2.  The relevant information stated therein listed: (1) the street and mailing address as 555 Anton Blvd., 1-3 Fl., Costa Mesa, CA 92626; (2) the registered agent as Legalinc Corporate Services, Inc. (C3444750); and (3) the management structure as "All LLC Member(s)".  *Id.*

On January 5, 2021, Joe Burwell filed a Statement of Information for the LLC with the California Secretary of State.[4]  To the extent worth noting, the signature line is blank. Nevertheless, this Statement of Information relevantly listed: (1) the street and mailing addresses as 555 Anton Blvd., 1-3 Fl., Costa Mesa, CA 92626; (2) the two managers/members as Joe Burwell (whose address was listed as 555 Anton Blvd., 1-3 Fl., Costa Mesa, CA 92626) and Andrew Burwell (whose address was listed as 1000 S. Coast Dr., Apt. K201, Costa Mesa, CA 92626); (3) the registered agent as Legalinc Registered Agents, Inc. (C4249296); (4) the type of business as assisting the preparation of loan documents; and (5) no name or address for the Chief Executive Officer ("CEO").

---

[4] Plaintiff did not attach this Statement of Information in any of her filings.  Nevertheless, as a public record, the Court may take judicial notice of it.  *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins.*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("[A] court may: . . . take judicial notice, whether requested or not of its own records and files, and facts which are part of its public records." (internal citations omitted)).

On August 13, 2021, Andrew Burwell executed a declaration under the penalty of perjury. Doc. 2 at 3. The declaration was then filed on August 20, 2021. *See generally* Doc. 2. Andrew Burwell's declaration was based upon his personal knowledge, *id.* at 1 ¶ 1, as one of the two managing members for the LLC, *see id.* at 1-2 ¶ 2. Of relevance herein, Andrew Burwell declared that: (1) he (who was domiciled in Laguna Beach, CA) and his father, Jody Burwell (who was domiciled in Placentia, CA), were the only two members of the LLC, *id.* at 2 ¶ 3-4; (2) neither he nor Jody Burwell were licensed attorneys in any state, *id.*; (3) Defendant Alum "was unaware of the State Court Action prior to Alum Financial being served the complaint on July 20, 2021," when Andrew Burwell received the complaint by certified mail, *see id.* at ¶ 5; and (4) as one of the LLC's two managing members, he was "familiar with and ha[d] personal knowledge of [the LLC]'s operations, past, current and projected revenue, operating expenses, and profits," and that the LLC's "losses would exceed $75,000 were it prohibited from operating in the State of New Mexico," *id.* at ¶ 6.

On January 18, 2022, Plaintiff deposed Andrew Burwell via Zoom. *See generally* Doc. 100 at 6-14 (Ex. A (Deposition Transcript)) (hereafter, "Depo. Tr."). Andrew Burwell was duly sworn under oath, *id.* at 8 (Depo. Tr. at 4:1-4:3), and was put on notice that his testimony "ha[d] the same impact as if [he] were in front of a judge and jury," *id.* (Depo. Tr. at 4:14-4:16); *see also id.* (Depo. Tr. at 4:16-4:23 (informing Andrew Burwell of other safeguards and procedures to ensure the accuracy of his testimony)). During this deposition, Andrew Burwell testified that he was the CEO of the LLC, *id.* at 9 (Depo. Tr. at 5:12), and that the only other officer was "Jody Burwell, [his] father," *id.* (Depo. Tr. at 5:14). Andrew Burwell further testified that there were no other officers nor members of the LLC. *Id.* (Depo. Tr. at 5:15-5:18).

Andrew Burwell testified that "[c]urrently,"—meaning as of January 18, 2022, the date of the deposition—the LLC had "six [employees]," not including himself or Jody Burwell. *Id.* (Depo. Tr. at 5:19-5:25). Yet, Andrew Burwell also testified that the LLC wound down its operations at an unspecified date in "the beginning of August" 2021. *Id.* at 12 (Depo. Tr. at 47:5). Andrew Burwell testified that he "can't tell you exactly what day [this decision] happened," *id.* (Depo. Tr. at 47:7-47:8), but that "[i]t could very well have been" on August 14, 2021, *see id.* (Depo. Tr. at 47:14-47:20), the day after Andrew Burwell signed the declaration (Doc. 2) representing to the Court that the LLC would lose $75,000 over the next ten years if unable to conduct business in the State of New Mexico, *see id.* at 10-12 (Depo. Tr. at 45:8-46:9, 46:25-47:13).

The decision to wind down was jointly and exclusively made by Andrew Burwell and Jody Burwell, *id.* at 12 (Depo. Tr. at 47:21-47:25), because they "decided that it was just best for us to wind down the business," *id.* (Depo. Tr. at 47:9-47:10). Andrew Burwell also explained that this decision was "just for the sake of getting out of the industry," *id.* at 10 (Depo. Tr. at 45:24-45:25), and "in order to alleviate and avoid further problems," *id.* at 11 (Depo. Tr. at 46:7-46:8).

On August 8, 2024, Joe Burwell filed and electronically signed a Statement of Information for the LLC with the California Secretary of State. *See generally* Doc. 105-1. Joe Burwell's signature was accompanied by a certification that he affirmed "under penalty of perjury that the information herein is true and correct and that [he was] authorized by California law to sign." *Id.* at 3. Of relevance, this Statement of Information listed: (1) the principal, mailing, and street addresses as 555 Anton Blvd., 1-3 Fl., Costa Mesa, CA 92626; (2) the two managers/members as Joe Burwell (whose address was listed as 555 Anton Blvd., 1-3 Fl., Costa

Mesa, CA 92626) and Andrew Burwell (whose address was listed as 1000 S. Coast Dr., Apt. K201, Costa Mesa, CA 92626); (3) the registered agent as California Registered Corporate Agent (1505) (whose address was listed as "REPUBLIC REGISTERED AGENT INC.[,] Registered Corporate 1505 Agent"); (4) the type of business as assisting the preparation of loan documents; and (5) no name or address for the CEO. *Id.* at 2. Additionally, when prompted to opt in or out of email notifications, the Statement of Information stated "No, I do NOT want to receive entity notifications via email. I prefer notifications by USPS mail." *Id.*

Pursuant to the public records available with the California Secretary of State, the LLC was suspended by the Franchise Tax Board on May 1, 2025. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins.*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("[A] court may: . . . take judicial notice, whether requested or not of its own records and files, and facts which are part of its public records." (internal citations omitted)).

## II. **RELEVANT PROCEDURAL BACKGROUND**

On June 16, 2021, Plaintiff filed suit against Defendant Alum in the First Judicial District for the County of Santa Fe, New Mexico. *See* Doc. 1-1 at 3. Defendant Alum removed the case to this Court on August 20, 2021. Doc. 1. On March 24, 2022, with leave of the Court, *see* Docs. 34-35, Plaintiff filed a Second Amended Class Action Complaint for Damages, Declaratory Relief and Injunctive Relief, Doc. 36, which remained the operative complaint in this matter. Therein, Plaintiff added Defendant Debt Pay Pro, Inc. ("Defendant Debt Pay Pro") as a second defendant and alleged that both defendants violated the New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57-12-1 to 57-12-26, and the Telephone Consumer Protection Act, 47 U.S.C. § 227; 47 C.F.R. § 64.1200. *See* Doc. 36 at 8-11 ¶¶ 50-71.

On September 12, 2024, Judge Vázquez granted Defendant Debt Pay Pro's *Motion to Dismiss* (Doc. 41), thereby leaving Defendant Alum the sole remaining defendant.  Doc. 59.  In light of this development, the undersigned held a status conference on October 29, 2024, to discuss the status of the case and reestablish case management deadlines.  *See* Doc. 69 at 1.  At this status conference, counsel mutually reported that the parties agreed to settle all claims and were in the process of finalizing the paperwork.  *Id.*  Therefore, in lieu of scheduling a settlement conference, the Court ordered the parties to file closing documents within thirty days.  *Id.*

On November 25, 2024, Plaintiff filed notice that Defendant Alum had not yet performed its payment obligation under the settlement agreement and therefore anticipated filing a motion to enforce.  Doc. 70.  The Court therefore extended the deadline for closing documents to January 2, 2025.  Doc. 71.  Due to Defendant Alum's continued failure to execute the settlement agreement, Plaintiff filed a *Motion to Enforce Settlement Agreement* on December 20, 2024, Doc. 72, which Judge Vázquez referred to the undersigned on December 23, 2024, Doc. 73. Defendant Alum did not file a response.  Having found that Plaintiff and Defendant Alum formed a binding and legally enforceable contract, the undersigned entered a Proposed Findings and Recommended Disposition ("PFRD") on February 7, 2025, recommending that Plaintiff's *Motion to Enforce Settlement Agreement* (Doc. 72) be granted.  Doc. 74.

On February 12, 2025, Defendant Alum's (now former) counsel filed a *Motion to Withdraw as Counsel of Record*.  Doc. 75.  Therein, Defendant Alum's former counsel explained that after agreeing to settle and receiving the draft settlement agreement from Plaintiff's counsel on October 18, 2024, former counsel sent Defendant Alum 6 e-mails, 8 text messages, and at least 18 phone calls between October 20, 2024, and January 15, 2025.  *Id.* at 4-6.  Of these communications, Defendant Alum only responded to one text message on October 23, 2024.

Consequently, Defendant Alum's continued failure to respond to former counsel prevented former counsel from filing a response to Plaintiff's *Motion to Enforce the Settlement Agreement* (Doc. 72). *Id.* at 6. In fact, former counsel stated they "do not even know if Alum continues to operate or exists as a viable entity." *Id.* In the *Motion to Withdraw as Counsel of Record*, former counsel put Defendant Alum on notice that it had fourteen days to respond to the motion, *id.* at 2, and twice put Defendant Alum on notice that it, as an LLC, could not proceed pro se, *id.* at 2, 7.

Filed concomitantly with the *Motion to Withdraw as Counsel of Record* (Doc. 75), Defendant Alum's former counsel filed Proof of Service on Defendant Alum and its two members (listed as Joe Burwell and Andrew Burwell). Doc. 76. Specifically, on February 12, 2025, *see id.* at 2, former counsel mailed notice to the following three recipients and addresses: (1) Joe Burwell at 555 Anton Blvd., 1-3 Fl., Costa Mesa, CA 92626; (2) Andrew Burwell at 1000 S. Coast Drive, Apt. K201, Costa Mesa, CA 92626; and (3) Defendant Alum, courtesy of its registered agent, Republic Registered Agent Inc., at 3400 Cottage Way, Suite G2, Sacramento, CA 95825. *Id.* at 4. Additionally, former counsel emailed notice on February 12, 2025, *see id.* at 2, to Andrew Burwell at "andrew@leclix.com," *id.* at 4.

Neither Defendant Alum nor Plaintiff filed in opposition to the *Motion to Withdraw as Counsel of Record* (Doc. 75).

On March 12, 2025, Judge Vázquez issued an Order Adopting Magistrate Judge's Proposed Findings and Recommended Disposition. Doc. 78. Later that same day, the undersigned granted the *Motion to Withdraw as Counsel of Record* (Doc. 75). Doc. 79.

On March 20, 2025, Plaintiff filed a *Motion for Entry of Judgment*. Doc. 80. On April 28, 2025, Judge Vázquez granted Plaintiff's *Motion for Entry of Judgment*, Doc. 81, and separately entered a Final Judgment, Doc. 82, which "enforce[d] the Settlement Agreement

between the parties," ordered "[Defendant] Alum [to] fully perform under the Settlement Agreement within fifteen (15) days of the entry of this Judgment," and warned that "upon failing to perform, an Order to [Show] Cause shall be entered requiring one of the members of the LLC to appear in person before the Court or be held in contempt of Court," *id.* at 1.

On April 30, 2025, Plaintiff served Defendant Alum and the LLC's members notice of the Final Judgment via USPS-First Class Mail and USPS-Priority Mail to the following four recipients and addresses: (1) Alum Financial LLC, c/o Republic Registered Agent Inc., at 3400 Cottage Way, Suite G2, Sacramento, CA 95825; (2) Andrew Burwell at 1000 S. Coast Dr., Apt. K201, Costa Mesa, CA 92626; (3) Jody A. Burwell at 1713 Heritage Ave., Placentia, CA 92870; and (4) Alum Financial LLC, Andrew Burwell/Jody A. Burwell, at 151 Kalmus Dr., Suite C-250, Costa Mesa, CA 92626.  Doc. 83 at 1-2 ¶ 4.  The notice was confirmed delivered by USPS Priority Mail on May 3, 2025.  *Id.*

On June 26, 2025, Plaintiff filed a *Motion for Order to Show Cause*.  Doc. 83.  Therein, Plaintiff moved for: (1) "an Order to Show Cause requiring a duly authorized member of Alum Financial, LLC to appear in person before the Court on a date certain to explain its failure to comply with the Court's Final Judgment;" and (2) "an award of reasonable attorney fees for the filing of the motion to enforce, obtaining entry of judgment, submission of this motion, and for further efforts to obtain satisfaction of this judgement."  *Id.* at 2.

On August 21, 2025, Judge Vázquez referred Plaintiff's *Motion for Order to Show Cause* (Doc. 83) to the undersigned "to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case."  Doc. 84.  Accordingly, on September 5, 2025, the undersigned set an in-person motion and evidentiary hearing on Plaintiff's *Motion for Order to Show Cause* (Doc. 83) for November

6, 2025, at 9:30 a.m., Doc. 85, in Pecos Courtroom, Doc. 89.  The purpose of the hearing was to take evidence on Plaintiff's *Motion for Order to Show Cause* (Doc. 83) and allow Defendant Alum the opportunity to show cause why it should not be held in civil contempt for failing to comply with Judge Vázquez's Final Judgment (Doc. 82).  Doc. 85 at 1; *see also* Doc. 98 at 2.

In the Order Setting In-Person Motion Hearing, the Court directed the Clerk of the Court to send copies of the order (Doc. 85) and Plaintiff's *Motion for Order to Show Cause* (Doc. 83) via first-class mail to the same four recipients and addresses Plaintiff previously sent notice of the Final Judgment.  *See* Doc. 85 at 1-2.  The Court also directed the United States Marshals Service to personally serve a copy of the order (Doc. 85) and Plaintiff's *Motion for Order to Show Cause* (Doc. 83) to the following two recipients and addresses: (1) Andrew Burwell at 1000 S. Coast Dr., Apt. K201, Costa Mesa, CA 92626; and (2) Alum Financial LLC, Andrew Burwell/Jody A. Burwell, at 151 Kalmus Dr., Suite C-250, Costa Mesa, CA 92626.  Doc. 85 at 2. The Court again ordered the same manner of delivery when it issued the Order Resetting In-Person Motion Hearing by Courtroom Location Only on October 6, 2025.  Doc. 89.

The Court first received a signed return on September 22, 2025, for the first-class mail delivery to Alum Financial LLC, courtesy of Republic Registered Agent Inc., at 3400 Cottage Way, Suite G2, Sacramento, CA 95825.  Doc. 87.  The Court also received a signed return receipt on October 3, 2025, for the first-class mail delivery to Jody A. Burwell at 1713 Heritage Ave., Placentia, CA 92870.  Doc. 90.  Notably, this return receipt bears the name and signature of "Sandra Ortiz," whose relationship to Jody Burwell is presently unknown to the Court.  *Id.* at 2. As for the other two addresses, the mail was returned as undeliverable.  *See* Docs. 88, 92, 95,

10

96.[5]  Moreover, the summonses by the United States Marshals Service were returned unexecuted. Docs. 93, 94.

At 4:18 p.m. on November 5, 2025—the evening before the hearing—Jody Burwell emailed the Court an *Emergency Pro Se Motion to Continue Hearing, Permit Remote Appearance, and Dismiss or Stay for Lack of Enforceable Relief* ("*Emergency Pro Se Motion*"). Doc. 97 (original title in all capital letters).  Putting aside Jody Burwell's non-attorney status and resulting inability to file motions on behalf of a corporate entity, *see Harrison v. Wahatoyas, L.L.C.*, 253 F.3d 552, 556 (10th Cir. 2001) ("As a general matter, a corporation or other business entity can only appear in court through an attorney and not through a non-attorney corporate officer appearing pro se." (citation omitted)), the Court converted the hearing to occur via Zoom. *See* Doc. 98 at 1.  Despite successful delivery of notice of the hearing, *see* Docs. 87, 90, and Jody Burwell having reached out to Plaintiff's counsel as early as October 5, 2025, *see* Doc. 99 at 8 (billing entry for 0.10 hours for "[r]eview communication under R408 from J Burwell"), Defendant Alum failed to appear through counsel at the evidentiary hearing on Plaintiff's *Motion for Order to Show Cause* (Doc. 83) and thus failed to obey the Court's order to retain counsel, *see* Doc. 85 at 1.  Instead, Jody Burwell appeared in his individual capacity.  *See* Doc. 98 at 1-2. The Court nevertheless went forward with the hearing and set forth the relevant legal standards, took judicial notice of the record, and allowed Plaintiff's counsel to go forward with examining Jody Burwell under oath as to his *personal* knowledge, in his *individual* capacity, concerning the statements he made in the *Emergency Pro Se Motion* (Doc. 97).  *See id.*  Given the receptivity of Plaintiff's counsel and Jody Burwell to independently cure the need for coercive civil contempt

---

[5] In total, the Court made eight first-class mailings.  Of those, two produced signed return receipts (Docs. 87, 90), four were returned as undeliverable (Docs. 88, 92, 95, 96), and two produced no response of either kind.  The two unresponsive mailings were directed to the same two addresses that had previously produced signed return receipts.

sanctions, the Court ordered Plaintiff's counsel to email (cc'ing Jody Burwell) Judge Robbenhaar's chambers a status report within 15 days. *See id.* at 4.

As ordered, Plaintiff's counsel timely emailed Judge Robbenhaar's chambers a status report on November 21, 2025. This status report informed the Court that payment of the full settlement amount, $12,500, had been received. Further, Plaintiff's counsel had presented Defendant Alum an invoice for payment of the attorney fees resulting from Defendant Alum's untimely payment of the settlement and requested an additional 15 days to resolve this issue or file a motion moving to impose attorney fees as a sanction.

On December 8, 2025,[6] Plaintiff's counsel emailed Judge Robbenhaar's chambers the second status report, explaining that Plaintiff's counsel had made an offer of compromise for attorney fees on November 18, 2025, but no response had been received. Thus, Plaintiff filed the present *Motion for Attorney Fees as a Sanction* that same day, Doc. 99, which Judge Vázquez referred to the undersigned on January 13, 2026, Doc. 103.

After Defendant Alum initially failed to respond to the *Motion for Attorney Fees as a Sanction* (Doc. 99), the Court *sua sponte* reset the Response and Reply deadlines, Doc. 102, after counsel entered an appearance on January 9, 2026, Doc. 101. Accordingly, Defendant Alum responded on January 26, 2026, Doc. 104, and Plaintiff replied on February 5, 2026, Doc. 105. Plaintiff filed Notice of Completion of Briefing on March 24, 2026. Doc. 106.

On March 24, 2026, Plaintiff also filed a *Request for Hearing* on the *Motion for Attorney Fees as a Sanction* (Doc. 99). Doc. 107. However, that same day, the Court denied Plaintiff's request because "Plaintiff did not list any reason or development supporting her request," and the

---

[6] The Court notes that the second status report was one day late. Nevertheless, the undersigned accepted this *limited* untimeliness, because the efforts of Plaintiff's counsel were directed at avoiding further judicial intervention and resolving the issue of contempt more expeditiously.

Court, having reviewed the relevant briefing, found "that a hearing is not necessary for Judge Robbenhaar's determination of the matter." Doc. 108 at 1.

### III. LEGAL STANDARDS

#### A. Ancillary Jurisdiction

Ancillary jurisdiction flows from the idea that "a district court acquires jurisdiction of a case or controversy in its entirety, and, as an incident to the full disposition of the matter, may hear collateral proceedings when necessary to allow it to vindicate its role as a tribunal." 13 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 3523.2 (3rd ed. 2025). "Thus, if a federal court had jurisdiction of the principal action, it may hear an ancillary proceeding, regardless of the citizenship of the parties, the amount in controversy, or any other factor that normally would determine subject matter jurisdiction." *Id.*

#### B. Court's Inherent Authority to Sanction

Inherent in the judicial power defined by Article III, there exist "'[c]ertain implied powers [that] must necessarily result to our Courts of justice from the nature of their institution,' powers 'which cannot be dispensed with in a Court, because they are necessary to the exercise of all others.'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (first quoting *United States v. Hudson*, 7 Cranch 32, 34 (1812); and then citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980)).

In *Chambers*, the Supreme Court identified three recognized instances where a court may shift attorney fees pursuant to its inherent authority. *Id.* at 45-46. First is the "common fund exception," which "derives not from a court's power to control litigants, but from its historic equity jurisdiction," *id.* at 45 (citing *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 164 (1939)), and permits a fee award to a party "whose litigation efforts directly benefit others," *id.* (citing

13

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257-58 (1975)). "Second, a court may assess attorney's fees as a sanction for the 'willful disobedience of a court order.'" *Id.* (quoting *Alyeska*, 421 U.S. at 258). Third, a court may assess attorney's fees when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons," *id.* at 45-46 (quoting *Alyeska*, 421 U.S. at 258-59 (quotation marks omitted)), which "transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself, thus serving the dual purpose of 'vindicat[ing] judicial authority without resort to the more drastic sanctions available for contempt of court and mak[ing] the prevailing party whole for expenses caused by his opponent's obstinacy,'" *id.* at 46 (quoting *Hutto v. Finney*, 437 U.S. 678, 689 n.14 (1978)) (alterations in original).

Courts' inherent authority "includes 'the ability to fashion an appropriate sanction for conduct which abuses the judicial process.'" *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) (quoting *Chambers*, 501 U.S. at 44-45). Relevant here, such sanctions may include an award of attorney fees. *Id.* (citing *Chambers*, 501 U.S. at 45). However, the exercise of such inherent powers "must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44 (citing *Roadway Express*, 447 U.S. at 764). Relatedly, in *Goodyear*, the Supreme Court clarified that when a court awards attorney's fees under its inherent authority, it must be "compensatory rather than punitive," 581 U.S. at 109 (citing *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 826-30 (1994)), and thus be limited to the reasonable fees actually incurred but for the sanctionable conduct, *id.* at 108-10. But as the Supreme Court "stressed in *Fox*, trial courts undertaking that task 'need not, and indeed should not, become green-eyeshade accountants' (or whatever the contemporary equivalent is)." *Id.* at 110 (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)).

14

The Tenth Circuit recognizes three types of bad faith conduct: (1) bad faith occurring during the course of the litigation; (2) bad faith in bringing or maintaining a meritless claim or colorless defense; and (3) bad faith in the acts giving rise to the substantive claim. *Towerridge, Inc. v. T.A.O., Inc.*, 111 F.3d 758, 768 (10th Cir. 1997) (citations omitted). Of these categories, only the first two involve conduct which may justify a fee shifting award. *Id.* In sufficiently showing the occurrence of bad faith conduct warranting sanctions, the Tenth Circuit has explained:

> We lack precedent establishing the standard of proof required by a fee-shifting sanction leveled under a court's inherent power. But in the past we have required clear-and-convincing evidence that a litigant acted in bad faith to support a dismissal sanction. *Xyngular v. Schenkel*, 890 F.3d 868, 873-74 (10th Cir. 2018); *see also FTC v. Kuykendall*, 371 F.3d 745, 754 (10th Cir. 2004) (applying the clear-and-convincing-evidence standard for proof of contempt of court in connection with civil contempt sanctions). And other circuits require district courts to find evidence of bad-faith abuse of the judicial process by clear-and-convincing evidence. *See, e.g., Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 235 (2nd Cir. 2020). We see no reason why that standard should not apply here.

*Becker v. Ute Indian Tribe of Uintah & Ouray Reservation*, No. 22-4022, 2023 WL 5051167, at *6 (10th Cir. Aug. 8, 2023) (internal citations cleaned up). The clear-and-convincing-evidence standard requires that "evidence places in the ultimate factfinder an abiding conviction that the truth of its factual contentions are highly probable." *Id.* (quoting *United States v. Valenzuela-Puentes*, 479 F.3d 1220, 1228 (10th Cir. 2007)) (quotation marks omitted).

### 1.  **Liability of Non-Party Corporate Entity Officers**

The Court's ability to sanction is not limited to parties and their counsel. *See In re White*, No. 07cv342, 2013 WL 5295652, at *30 (E.D. Va. Sept. 13, 2013) (collecting cases). Relevant here, "[a] court may sanction a non-party corporate officer who acts improperly on behalf of a corporate defendant and who attempts to avoid sanctions by hiding behind the corporate veil." *Anchondo v. Anderson, Crenshaw & Assocs., LLC*, No. CV 08-202, 2011 WL 4549279, at *4

(D.N.M. Sept. 29, 2011) (first citing *In re Courtesy Inns, Ltd.*, 40 F.3d 1084, 1089-90 (10th Cir. 1994); and then citing *Helmac Prods. Corp. v. Roth (Plastics) Corp.*, 150 F.R.D. 563, 568 (E.D. Mich. 1993)), *aff'd sub nom. Anchondo v. Dunn*, 511 F. App'x 736 (10th Cir. 2013)).

To extend the courts' inherent authority over "a non-party not subject to court order," the Court must find that the non-party "(1) ha[d] a substantial interest in the outcome of the litigation and (2) substantially participate[d] in the proceedings in which he interfered." *Helmac*, 150 F.R.D. at 568. This test "effectively limit[s] the scope of the Court's inherent power to sanction to those individuals who were either (1) parties, (2) subject to a court order, or (3) real parties in interest." *Id.*

## C. **Reasonable Attorney's Fees**

The proper vehicle for calculating a reasonable award of attorney's fees is the lodestar method: the Court multiplies a reasonable hourly rate by the number of hours reasonably expended. *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998); *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1249 (10th Cir. 1998). The movant bears the burden of proving both the reasonableness of the rates and the hours expended, *Case*, 157 F.3d at 1249, and the billing attorneys must exercise billing judgment by excluding hours that are "excessive, redundant, or otherwise unnecessary," *Robinson*, 160 F.3d at 1281.

In determining whether the hourly rate is reasonable:

the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. A rate determined in this way is normally deemed to be reasonable, and is referred to—for convenience—as the prevailing market rate.

16

*Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).  "Only if the district court does not have before

it adequate evidence of prevailing market rates may the court, in its discretion, use other relevant

factors, including its own knowledge, to establish the rate."  *Case*, 157 F.3d at 1257.

"Counsel for the party claiming the fees has the burden of proving hours to the district

court by submitting meticulous, contemporaneous time records that reveal, for each lawyer for

whom fees are sought, all hours for which compensation is requested and how those hours were

allotted to specific tasks."  *Id.* at 1250 (citing *Ramos v. Lamm*, 713 F.2d 546, 554 (10th Cir. 1983),

*overruled on other grounds by Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 483

U.S. 711 (1987)).  In determining whether the hours expended on a case were reasonable, courts

consider several factors:

> (1) whether the fees are for tasks that would ordinarily be billed to a client; (2)
> whether the party's counsel used "billing judgment" to winnow the hours from
> those actually spent to those that were reasonably expended; and (3) whether the
> amount of time spent on a task was reasonable in light of the complexity of the case
> or necessitated by the strategies employed by the party's opponent.

*Preitauer v. Am. Fam. Mut. Ins.*, 741 F. Supp. 3d 934, 941-42 (D. Colo. 2024) (citing *Etherton v.*

*Owners Ins.*, 82 F. Supp. 3d 1190, 1198 (D. Colo. 2015)).  With respect to the third factor—

determining a reasonable amount of time in which to perform a given task—the billing attorney

should consider: "(1) the complexity of the case; (2) the number of reasonable strategies pursued;

(3) the responses necessitated by the maneuvering of the other side; and (4) the potential

duplication of services caused by the presence of multiple attorneys when one would suffice."

*Etherton*, 82 F. Supp. 3d at 1198 (citing *Ramos*, 713 F.2d at 554).

**IV. <u>ANALYSIS</u>**

**A.  <u>The Court Retains Continuing Ancillary Jurisdiction</u>**

Before turning to the substantive merits at issue, the Court briefly sets forth its proper jurisdiction over this matter.  Although this is not an issue raised by the parties, "federal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press."  *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011).

The Court previously found that it had ancillary jurisdiction because trial courts have the power to summarily enforce settlement agreements entered into by the litigants while the litigation remains pending.  *See* Doc. 74 at 7 (citing *United States v. Hardage*, 982 F.2d 1491, 1496 (10th Cir. 1993)).  Pursuant to that authority, the Court granted Plaintiff's *Motion to Enforce Settlement Agreement* (Doc. 72).  Doc. 78.  Relevant to the present analysis, which largely hinges on the continued avoidance of the settlement agreement the Court enforced, "[i]t is well-established that a court retains ancillary jurisdiction over subsequent proceedings to enforce its own orders and judgments."  *Phone Directories Co. v. Clark*, 209 F. App'x 808, 812 (10th Cir. 2006) (citing *Peacock v. Thomas*, 516 U.S. 349, 356 (1996)).

**B.  <u>The Court's Inherent Authority to Sanction</u>**

Plaintiff seeks, as a sanction for Defendant Alum's noncompliance with the Final Judgment (Doc. 82), a compensatory award for resulting attorney's fees, totaling $11,943.90, jointly and severally against both members of the LLC (Andrew Burwell and Jody Burwell).  *See generally* Docs. 99, 100.  Plaintiff further requests "findings that both individuals exercised complete control over the entity, misused the LLC form to evade compliance with the Final

18

Judgment, failed to appear as ordered, and obstructed enforcement," as well as "any additional relief the Court deems necessary to enforce compliance with its orders."  Doc. 100 at 4.

Defendant Alum's Response (Doc. 104) can be summarized as raising the following arguments: (1) its conduct did not rise to the level of bad faith or abuse of the judicial process at issue in *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), or *Farmer v. Banco Popular of N. Am.*, 791 F.3d 1246 (10th Cir. 2015), Doc. 104 at 4-7; (2) Plaintiff failed to meet the burden for demonstrating alter-ego liability against Jody Burwell and Andrew Burwell under federal common law, *id.* at 6-7; (3) Plaintiff's requested fees are unreasonable, disproportionate to the settlement amount, include work beyond the scope of enforcement, and lack billing judgment, *id.* at 2, 7; (4) Plaintiff failed to establish that Defendant Alum's conduct proximately caused the fees incurred, *id.*; and (5) the Court should order post-judgment discovery under FED. R. CIV. P. 69(a)(2) to allow investigation into the reasonableness of the fees and to reconstruct the purportedly block-billed entries, Doc. 104 at 8-9.

Plaintiff's Reply (Doc. 105) can be summarized as raising the following counterarguments: (1) Defendant Alum's pattern of refusing to cooperate with its former counsel, the Court, and Plaintiff's counsel demonstrates contempt for these proceedings and constitutes sanctionable conduct, Doc. 105 at 1, 3; (2) although additional efforts to accomplish service were unsuccessful, Defendant Alum was properly served throughout this matter, on either Defendant Alum itself at its business address, *id.* at 2, the LLC's registered agent, *id.* (citing FED. R. CIV. P. 4(h)), and/or the LLC's two managing members (Jody Burwell and Andrew Burwell) at their last known personal addresses, *id.* (citing FED. R. CIV. P. 5(b)(2)); (3) Defendant Alum bore the responsibility of keeping the Court informed of any changes in its address, *id.* (citing D.N.M.LR-Civ. 83.6); (4) the attorney fees sought are reasonable, were actually incurred to compel

Defendant Alum's compliance with the Final Judgment (Doc. 82), and were contemporaneously recorded in counsel's billing software, *id.* at 3; and (5) FED. R. CIV. P. 69(a)(2) authorizes discovery only by judgment creditors, not judgment debtors, and thus does not support Defendant Alum's request for post-judgment discovery, Doc. 105 at 3.

Both parties invoke *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), for the proposition that the Court's inherent authority supplies a basis to award attorney's fees as a sanction. *See* Doc. 99 at 2; Doc. 100 at 1; Doc. 104 at 4-5; Doc. 105 at 1, 3. As the Supreme Court explained in *Chambers*, in addition to another form not relevant here, a court may issue compensatory sanctions under either its civil contempt authority or its broader inherent sanction authority. *See* 501 U.S. at 45-46. Relatedly, the parties' briefing invokes principles from punitive civil contempt, inherent-authority sanctions, and veil-piercing without distinguishing among them.[7] However, the parties' briefing appears to largely hinge on the Court's broader inherent authority. *See generally* Docs. 99, 100, 104, 105. Nevertheless, in light of the mixed arguments and the inherent overlap between the means for sanctions, the Court now briefly discusses which framework is most appropriate here and thus directs the remainder of the analysis herein.

Having considered the briefing and the full record, the Court proceeds under its inherent authority to sanction bad faith conduct that abuses the judicial process. *Cf. Martinez v. Roscoe*, 100 F.3d 121, 123-24 (10th Cir. 1996). In addition to this framework being invoked by both parties, it allows the Court to consider the full scope of Defendant Alum's and its members' bad faith conduct, which the Court finds relevant given the events leading up to and resulting in the

---

[7] *See, e.g.*, Doc. 100 at 1-2 (discussing inherent authority sanctions); Doc. 100 at 1-4 (specifically discussing violations of the Court's orders, which could relate to contempt sanctions or broader authority sanctions); Doc. 100 at 3-4 (discussing federal common-law alter-ego principles, which is a piercing the veil principle, and citing multiple cases regarding piercing the veil); Doc. 104 at 2 (raising the substantial compliance defense, a defense to civil contempt); Doc. 104 at 4 (citing caselaw for the framework governing punitive sanctions); Doc. 104 at 6 (discussing federal common-law alter-ego principles, which is a piercing the veil principle).

Final Judgment, with which Defendant Alum then failed to comply.  *See Chambers*, 501 U.S. at 57 ("As long as a party receives an appropriate hearing . . . the party may be sanctioned for abuses of process occurring beyond the courtroom, such as disobeying the court's orders.").

### C. Sanctions are Warranted for the Bad Faith Conduct of Defendant Alum, Jody Burwell, and Andrew Burwell

Having established that the Court will proceed pursuant to its broader inherent authority to sanction bad-faith conduct, the Court now turns to whether sanctions are warranted and, if so, against whom.  Plaintiff seeks to hold Andrew Burwell and Jody Burwell—the LLC's only members—jointly and severally liable for the compensatory sanctions.  As set forth below, the record establishes that Defendant Alum, Jody Burwell, and Andrew Burwell engaged in a pattern of bad-faith conduct that abused the judicial process and caused Plaintiff to incur the attorney's fees she now seeks to recover.

#### 1.  Defendant Alum's Willful Disobedience and Bad Faith Conduct

The Court finds, by clear and convincing evidence, that Defendant Alum willfully disobeyed the Final Judgment (Doc. 82) and that its broader pattern of conduct demonstrates bad faith in dealing with the Court.  *See Becker*, 2023 WL 5051167, at *6.

First, after the parties agreed to settle all claims, and counsel mutually reported to the Court that the case was resolved, Doc. 69 at 1, Defendant Alum became entirely nonresponsive to its own attorneys, who sent 6 e-mails, 8 text messages, and at least 18 phone calls between October 20, 2024, and January 15, 2025—to which Defendant Alum responded only once via a text message on October 23, 2024.  Doc. 75 at 4-6.  This avoidance precluded former counsel from responding to the *Motion to Enforce Settlement Agreement* (Doc. 72), delayed signing the settlement agreement it authorized, and forced the withdrawal of Defendant Alum's former

counsel, who stated they "do not even know if Alum continues to operate or exists as a viable entity." *Id.* at 6.

Second, the withdrawal of counsel left Defendant Alum, as an LLC, unable to appear in federal court, because "a corporation or other business entity can only appear in court through an attorney and not through a non-attorney corporate officer appearing pro se." *Harrison*, 253 F.3d at 556 (citation omitted).  Defendant Alum was expressly put on notice of this requirement.  In the *Motion to Withdraw as Counsel* (Doc. 75), former counsel twice warned Defendant Alum that "pursuant to applicable law, including District of New Mexico Local Rule 83.7, a corporation, unincorporated association or other business entity cannot appear pro se in Federal Court and must be represented by an attorney authorized to practice before United States District Court for the District of New Mexico," and that "Alum must secure representation by an attorney licensed to practice in the United States District Court for the District of New Mexico if it wishes to continue to defend this action."  Doc. 75 at 2, 7.  Additionally, immediately preceding the second instance that this warning was stated, there was the following heading in bold, underlined, all-capital letters: "III. Pursuant to Local Rule 83.7, Alum is Hereby Advised That it Cannot Appear Pro Se in this Action."  *Id.* at 7.

On February 12, 2025, former counsel served the *Motion to Withdraw as Counsel* (Doc. 75) on Defendant Alum and both of its members.  Doc. 76; *accord* FED. R. CIV. P. 4(h), 5(b).  Nevertheless, Defendant Alum took no action to retain new counsel and failed to respond to the *Motion to Withdraw as Counsel* (Doc. 75), which constituted consent pursuant to D.N.M.LR-Civ. 83.8(b).  Doc. 79 at 2.  New counsel did not enter an appearance for Defendant Alum until January 9, 2026, Doc. 101—almost ten months after the Court granted the withdrawal of former counsel on March 12, 2025, Doc. 79.

Third, the Final Judgment was undoubtedly a valid, specific, and definite court order that Defendant Alum violated.  *See generally* Doc. 82.  The Final Judgment specifically "enforce[d] the Settlement Agreement between the parties," and clearly ordered Defendant Alum to "fully perform under the Settlement Agreement within fifteen (15) days of the entry of this Judgment." *Id.* at 1.  Because the Final Judgment was entered April 28, 2025, the definite deadline was May 13, 2025.  *See id.*  Yet, Defendant Alum disobeyed the order.  The fifteen-day compliance deadline expired on May 13, 2025, and Defendant Alum did not make the settlement payment on or before that date, provide any explanation, nor move for additional time.  *See* Doc. 83 at 2 ¶ 5. Instead, Defendant Alum tendered the full payment approximately six months later, only after Plaintiff filed a *Motion for Order to Show Cause* (Doc. 83), the Court held an evidentiary hearing (Doc. 98), and the Court afforded the parties fifteen days to resolve the matter independently. *See* Doc. 98 at 4; Doc. 99 at 2.

Defendant Alum had notice of the Final Judgment.  Plaintiff served copies of the Final Judgment on April 30, 2025, to the last known addresses of Defendant Alum, its registered agent, and both of its members.  Doc. 83 at 1-2 ¶ 4.  Delivery was confirmed on May 3, 2025.  *Id.* Federal Rule of Civil Procedure 5(b)(2)(C) provides that service by mail is "complete upon mailing."  To the extent Defendant Alum contends it did not actually receive the Final Judgment, such non-receipt is attributable to its own conduct in avoiding participation in this lawsuit and abandoning its counsel.  *See Pena v. Bd. of Cnty. Comm'rs for Cnty. of Santa Fe*, No. 21-1095, 2023 WL 1765382, at *2 (D.N.M. Feb. 3, 2023) ("[I]f [the contemnor] did not personally receive copies of the latter three orders, it was due to her unilateral decision to block or ignore the Court's and her counsel's communications.").

23

Fourth, Defendant Alum ignored the Court's Order Setting In-Person Motion Hearing by failing to appear through counsel as required.  Doc. 85 at 1.  This order was mailed and served via the United States Marshals Service to multiple addresses.  *See id.* at 1-2.  While true that mail was returned undeliverable for two addresses, Docs. 88, 92, 95, 96, and the summonses by the United States Marshals Service were returned unexecuted, Docs. 93, 94, there was ultimately sufficient service.  The Court received signed return receipts from the registered agent, Doc. 87, and from Jody Burwell at 1713 Heritage Ave., Placentia, CA 92870, Doc. 90.  Although the latter return receipt was signed by an individual named "Sandra Ortiz," whose relationship to this case and/or Jody Burwell is presently unknown to the Court, Jody Burwell subsequently confirmed this as being his address in the *Emergency Pro Se Motion*.  *See* Doc. 97 at 2.

This pattern—that is, abandoning counsel, ignoring the lawsuit, ignoring the Final Judgment, ignoring service, failing to timely retain counsel, and complying only under the most direct judicial compulsion—constitutes bad faith warranting sanctions pursuant to the Court's inherent authority.  *See Chambers*, 501 U.S. at 45-46.

Defendant Alum contends that its conduct "was not in bad faith and did not rise to the level of abuse of judicial process."  Doc. 104 at 4 (Subheading B).  It argues that the conduct at issue in *Chambers* and *Farmer* was far more egregious.  *See id.* at 4-5 (contrasting the patent destruction of evidence and sham filings in *Chambers* and the discovery abuses in *Farmer*).  The Court disagrees.  The question is not whether Defendant Alum's conduct was as extreme as the conduct in those cases, but whether it constituted bad faith.  *See* Chambers, 501 U.S. at 46 (explaining multiple reasons why courts' inherent power is "both broader and narrower than other means of imposing sanctions," including the fact that "whereas each of the other mechanisms reaches only certain individuals or conduct, the inherent power extends to a *full*

24

*range of litigation abuses*.  At the very least, the inherent power must continue to exist to *fill in the interstices*." (emphasis added)).  Here, the six-month refusal to comply with a clear judicial directive (to comply with the settlement agreement), combined with the pattern of disengagement and avoidance discussed above, clearly demonstrates bad faith.

### i.    Even if the Defense of Substantial Compliance Applies, it Fails

Defendant Alum raises the defense of "substantial compliance," arguing that its eventual tender of the settlement payment demonstrates compliance with the "core obligation under the settlement agreement."  Doc. 104 at 2.  This defense fails for multiple reasons.

As an initial matter, substantial compliance is typically a defense to civil contempt, where the question is whether the contemnor has "show[n] by clear and convincing evidence that 'all reasonable steps' were taken in good faith to ensure compliance with the court order and that there was substantial compliance, or relatedly by proving 'plainly and unmistakably' defendants were unable to comply with the court order." *Bad Ass Coffee Co. of Haw. v. Bad Ass Coffee Ltd.*, 95 F. Supp. 2d 1252, 1256 n.8 (D. Utah 2000).  Here, the Court is not proceeding under civil contempt; it proceeds under its inherent authority to sanction bad-faith conduct.  Moreover, although the substantial compliance defense has been recognized and applied by multiple district courts in the civil contempt context, the Tenth Circuit has not recognized it.  *See Phone Directories Co.*, 209 F. App'x at 815 (assuming without deciding that substantial compliance is a defense in a contempt proceeding).

Even assuming the defense applies in this context, Defendant Alum cannot satisfy it.  First, the Final Judgment ordered Defendant Alum to "fully perform under the Settlement Agreement within fifteen (15) days."  Doc. 82 at 1.  Akin to the Supreme Court's holding that "a filing deadline cannot be complied with, substantially or otherwise, by filing late—even by one

day," *United States v. Locke*, 471 U.S. 84, 101 (1985), it follows, then, that a court-ordered

deadline cannot be complied with, substantially or otherwise, six months late.  To hold otherwise

would reduce court-ordered deadlines to suggestions, undermining both the enforceability of

judgments and the reliability of the obligations they compel.  *See id.* ("Any less rigid standard

would risk encouraging a lax attitude toward filing dates[.]" (quotation marks omitted) (quoting

*United States v. Boyle*, 469 U.S. 241, 249 (1985))).

Second, Defendant Alum provided no evidence showing "that all reasonable steps were

taken in good faith to ensure compliance."  *Bad Ass Coffee Co. of Haw.*, 95 F. Supp. 2d at 1255

(emphasis added); *see also United States v. Hayes*, 722 F.2d 723, 725 (11th Cir. 1984) ("Even if

the efforts he did make were 'substantial,' 'diligent' or 'in good faith,' as the [district] court so

characterized them in other sections of its order, the fact that [the contemnor] did not make 'all

reasonable efforts,' establishes that [the contemnor] did not sufficiently rebut the [movant's]

prima facie showing of contempt." (internal citation omitted)).  To the contrary, as set forth

above, the record demonstrates that Defendant Alum took no steps toward compliance until

recently compelled by the impending full weight of judicial authority.

### ii.  Even if Defense of Inability to Pay Applies, it Fails

Defendant Alum invokes the four-factor framework from *Farmer*, 791 F.3d at 1259-60,

which the Tenth Circuit adapted from *White v. Gen. Motors Corp.*, 908 F.2d 675 (10th Cir. 1990),

to argue that "the sanction should be limited to the minimum amount necessary to adequately

deter the improper conduct" and that "the court must consider the sanctioned party's ability to

pay."  Doc. 104 at 4 (citing *Farmer*, 791 F.3d at 1259).

In *Farmer*, the Tenth Circuit adopted four factors for measuring punitive inherent-

authority sanctions: (1) whether the amount of fees and costs awarded is reasonable; (2) whether

26

the award is the minimum amount reasonably necessary to deter the undesirable behavior; (3) the (in)ability to pay; and (4) depending on the circumstances, whether any other factors favor a lesser or greater sanction. 791 F.3d at 1259 (citing *White*, 908 F.2d at 684-85). The *Farmer* court expressly characterized the fee award as "a punitive sanction in the nature of a fine," *id.*, and the factors it adopted from *White* were designed for sanctions with a deterrent purpose, *see White*, 908 F.2d at 685 ("Because of their deterrent purpose, Rule 11 [monetary] sanctions are analogous to punitive damages.").

However, two years after *Farmer*, the Supreme Court decided *Goodyear*, which held that fee-shifting under the Court's inherent authority must be "compensatory rather than punitive," and therefore must satisfy a "but-for causation" requirement. 581 U.S. at 108-09; *see also KCI USA, Inc. v. Healthcare Essentials, Inc.*, 339 F. Supp. 3d 672, 687 n.13 (N.D. Ohio 2018) ("*Goodyear* casts doubt on the conclusion that inherent-authority sanctions are always punitive in nature."), *vacated and remanded*, 797 F. App'x 1002 (6th Cir. 2020). Therefore, while district courts should consider the ability to pay when assessing punitive sanctions, that is not the case when compensatory sanctions are ordered. *See Stenson v. Edmonds*, 86 F.4th 870, 877-78 (10th Cir. 2023) (applying *Goodyear* but-for standard to uphold a blanket fee award where the entire case was initiated in bad faith, while making no mention of ability to pay). Because the Supreme Court has explained that sanctions for bad-faith litigation behavior under a court's inherent authority are compensatory, the Court need not consider ability to pay. Other courts have reached the same conclusion. *See, e.g.*, *LaJeunesse v. BNSF Ry.*, No. 18-214, 2019 WL 7037604, at *5 (D.N.M. Dec. 20, 2019); *Kriegman v. Mirrow*, No. 15-cv-01542, 2021 WL 5235647, at *6 (D. Colo. Feb. 8, 2021), *objections overruled sub nom. Kriegman as Tr. for LLS Am., LLC v. Mirrow*, 2021 WL 5957417 (D. Colo. Dec. 16, 2021). Instead, the operative question is whether

the fees sought were actually and reasonably incurred as a result of Defendant Alum's sanctionable conduct.  *See Goodyear*, 581 U.S. at 108-10.

Even assuming, *arguendo*, that the *Farmer* factors apply, each factor weighs in favor of awarding compensatory attorney fees.  *See* 791 F.3d at 1259.  First, the amount of fees awarded is reasonable.  As discussed below, *infra* Section IV.D.1-2, the award recommended is limited to the actual and reasonable fees Plaintiff incurred as a result of the conduct at issue.  *See Farmer*, 791 F.3d at 1259 (finding lodestar calculation was "an acceptable approach to determine the reasonableness of a fee request under the circumstances presented.").  Second, the sanction is the minimum amount adequate to deter such misconduct, and although *Farmer* categorized such sanctions as punitive, it imposes no penalty beyond making Plaintiff whole.  *See id.* (limiting fee sanction for bad-faith delay in executing a settlement agreement to fees incurred after a "trigger date," which was the date the completed agreement was sent to the offending party).

Third, to the extent Defendant Alum argues that it wound down and is thus unable to pay, several Circuits have adopted the rule that a contemnor cannot assert an impossibility or "present inability to comply" defense if the contemnor was responsible for the impossibility or inability to pay.  *See, e.g.*, *In re Power Recovery Sys., Inc.*, 950 F.2d 798, 803 (1st Cir. 1991); *Elec. Workers Pension Tr. Fund of Loc. Union 58, IBEW v. Gary's Elec. Serv.*, 340 F.3d 373, 383 (6th Cir. 2003); *Chi. Truck Drivers v. Bhd. Lab. Leasing*, 207 F.3d 500, 506 (8th Cir. 2000); *Pesaplastic, C.A. v. Cincinnati Milacron Co.*, 799 F.2d 1510, 1522 (11th Cir. 1986).  Though the Tenth Circuit has not expressly adopted this rule, the rationale is persuasive, and, in any event, Defendant Alum's impossibility argument fails on its own terms.  The August 2021 wind-down predated Defendant Alum's agreement to settle this matter in October 2024.  In other words, Defendant Alum authorized settling all claims—an agreement this Court found valid and enforceable, Docs. 74,

28

78—with full knowledge of its own wind-down status. Having demonstrated the capacity to negotiate and agree to a settlement after the wind-down, Defendant Alum cannot now invoke that same wind-down as grounds for impossibility of compliance with the Final Judgment (Doc. 82) that merely enforced the settlement it voluntarily authorized. Moreover, Defendant Alum has offered no evidence of inability to pay. *See generally* Doc. 104. To the contrary, its ability to tender the full $12,500.00 settlement payment when finally compelled to do so undermines any suggestion of inability, whether it was by Defendant Alum, Jody Burwell, or Andrew Burwell. *See Farmer*, 791 F.3d at 1260. Fourth, no other factors favor a lesser sanction. *See id.*

### 2. Personal Liability of Jody Burwell and Andrew Burwell

Plaintiff seeks to hold Andrew Burwell and Jody Burwell—the sole members of the LLC—jointly and severally liable for the compensatory sanction. Doc. 100 at 1. Although Andrew Burwell and Jody Burwell are not named parties in this case, they may still be subject to the Court's inherent power to sanction. *See Anchondo*, 2011 WL 4549279, at *4 ("A court may sanction a non-party corporate officer who acts improperly on behalf of a corporate defendant and who attempts to avoid sanctions by hiding behind the corporate veil." (first citing *Courtesy Inns*, 40 F.3d at 1089-90; and then citing *Helmac*, 150 F.R.D. at 568)). To do so, the Court need not pierce the corporate veil. *See id.* To that end, the Court need not reach the parties' arguments regarding alter ego liability under federal common law, which goes to piercing the corporate veil.

Instead, the Court may use its inherent powers to sanction non-parties who "(1) have a substantial interest in the outcome of the litigation and (2) substantially participate[d] in the proceedings in which he interfered." *Helmac*, 150 F.R.D. at 568. As set forth below, Jody Burwell and Andrew Burwell satisfy each prong.

29

### i.    Substantial Interest in the Outcome

Courts have recognized that sole or controlling owners of a corporate entity have a substantial interest in litigation involving that entity, because the owners bear the economic consequences of any adverse outcome.  *See, e.g.*, *Helmac*, 150 F.R.D. at 567; *Anchondo*, 2011 WL 4549279, at *6.

Here, as the sole members and managers of the LLC, Doc. 100 at 9 (Depo. Tr. at 5:5-5:18); Doc. 105-1 at 2 (Statement of Information), Jody Burwell and Andrew Burwell are the only individuals with a stake in the LLC's obligations, *see United States v. Voss*, 82 F.3d 1521, 1526 (10th Cir. 1996) ("The required personal connection with the organization's defiance of the court may arise from the agent's general control over the organization's operations or from his or her participating or aiding and abetting in conduct circumventing the subpoena or order.").  Any liability imposed on Defendant Alum—an entity that has been suspended by the California Franchise Tax Board as of May 1, 2025—ultimately falls on its members.  Additionally, Jody Burwell and Andrew Burwell share the exclusive authority in decision-making for the LLC.

Therefore, Jody Burwell and Andrew Burwell have a substantial interest in the outcome of this litigation, and thus the first prong of the *Helmac* test is satisfied.

### ii.    Substantial Participation in the Proceedings

Both Jody Burwell and Andrew Burwell substantially participated in the proceedings giving rise to the sanctions presently sought.  The *Helmac* test requires participation that goes beyond a mere tangential connection to the litigation.  150 F.R.D. at 568.  Here, Jody Burwell and Andrew Burwell participated in two distinct ways: through direct engagement with the litigation and through directing the LLC's course of noncompliance.

30

As to direct engagement, the record shows that both Jody Burwell and Andrew Burwell affirmatively participated in these proceedings. Andrew Burwell executed a declaration under penalty of perjury at the outset of the case, representing to the Court that the LLC would suffer losses exceeding $75,000 if unable to conduct business in New Mexico. Doc. 2 at 2 ¶ 6. He subsequently testified under oath at his deposition on January 18, 2022, about his role as the LLC's CEO and sole decision-maker alongside his father, and about the LLC's operations and wind-down. Doc. 100 at 9 (Depo. Tr. at 5:5-5:16); *id.* at 12 (Depo. Tr. at 47:21-47:25). Jody Burwell filed the *Emergency Pro Se Motion* (Doc. 97) on the eve of the evidentiary hearing, appeared at the hearing, and testified under oath about his individual knowledge in his personal capacity. Doc. 98 at 1-2.

As to directing the LLC's noncompliance, Jody Burwell and Andrew Burwell were the sole individuals with authority to cause Defendant Alum to comply with the settlement agreement and the Final Judgment (Doc. 82), and neither took any action to do so for six months. The record shows that Jody Burwell and Andrew Burwell jointly controlled the LLC's operations, including the decision to wind down in August 2021, Doc. 100 at 12 (Depo. Tr. at 47:21-47:25), and that Jody Burwell continued managing the entity's state filings as recently as August 2024, Doc. 105-1 at 2.

The Court therefore finds that Jody Burwell and Andrew Burwell satisfy both prongs of the *Helmac* test: (1) they have a substantial interest in the outcome of this litigation; and (2) they substantially participated in the proceedings. *Helmac*, 150 F.R.D. at 568. Accordingly, the Court may properly exercise its inherent authority to impose sanctions against them personally, jointly and severally with Defendant Alum.

31

### 3.  **Due Process: Notice and Opportunity to be Heard**

When sanctions are sought pursuant to a court's inherent authority, due process requires that the person or entity against whom sanctions are to be imposed has received reasonable notice and a meaningful opportunity to be heard.  *See Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is *notice reasonably calculated*, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an *opportunity* to present their objections." (emphasis added)).  Importantly, the right to an opportunity to be heard does not require that the person actually avail themselves of that opportunity; due process is satisfied when adequate notice is given, and a meaningful opportunity is afforded.  *See id.*; *see also Jones v. Flowers*, 547 U.S. 220, 225 (2006) ("[D]ue process does not require actual notice . . . .").

### i.  **Defendant Alum**

Defendant Alum received constitutionally adequate notice and a meaningful opportunity to be heard at each stage of the enforcement proceedings and the underlying events leading up to the present motion.

As to notice, on April 30, 2025, Plaintiff served notice of the Final Judgment (Doc. 82) to Defendant Alum's registered agent, Republic Registered Agent Inc., *accord* FED. R. CIV. P. 4(h), and to both of the LLC's members at their respective last known addresses via USPS-First Class Mail and USPS-Priority Mail, *accord* FED. R. CIV. P. 4(h).[8]  *See* Doc. 83 at 1-2 ¶ 4.  On June 26,

---

[8] As noted, in addition to the service made directly to the LLC's registered agent, both of the LLC's members were served with these filings.  The Court further details such service below, *infra* Sections IV.D.3.ii-iii, but briefly reiterates that here because it is worth noting that a corporate entity only acts through its officers.  *See Louisville & C. Ry. v. Louisville Tr. Co.*, 174 U.S. 552, 573 (1899) ("A corporation, though legally considered a person, must perform its corporate duties through natural persons, and is impersonated in and represented by its principal officers, the president and directors, who are not merely its agents, but are, generally speaking, the representatives of the corporation in its dealings with others.").

2025, Plaintiff similarly served the *Motion for Order to Show Cause* (Doc. 83) to the same addresses.  *See* Doc. 83 at 3; *accord* FED. R. CIV. P. 4(h), 5(b).  The Court then mailed copies of the Order Setting In-Person Motion Hearing (Doc. 85) and the *Motion for Order to Show Cause* (Doc. 83) to Defendant Alum's registered agent and to the LLC and its members at their last known addresses, Doc. 85 at 1-2, and directed the United States Marshals Service to personally serve copies on Alum Financial, courtesy of Andrew Burwell/Jody A. Burwell, at 151 Kalmus Dr., Suite C-250 Costa Mesa, CA 92626, *id.* at 2.  The Court again ordered the same manner of delivery when it issued the *Order Resetting In-Person Motion Hearing by Courtroom Location Only* on October 6, 2025.  Doc. 89.  The Court received a signed return receipt from Defendant Alum's registered agent on September 22, 2025.  Doc. 87.  On December 8, 2025, Plaintiff served the *Motion for Attorney Fees as a Sanction* (Doc. 99) and the Supplemental Brief (Doc. 100) by USPS-certified mail to Defendant Alum's registered agent and by email to Jody Burwell at joeburwell@gmail.com.  Doc. 99 at 4; Doc. 100 at 5.

As to opportunity to be heard, after new counsel entered an appearance on January 9, 2026, Doc. 101, the Court *sua sponte* reset the briefing deadlines, Doc. 102.  Accordingly, Defendant Alum responded on January 26, 2026, addressing the merits of the present motion (Doc. 99).  Doc. 104.  Defendant Alum thus received both notice and a full opportunity to be heard, and it exercised that opportunity through its Response.  Due process is satisfied.

### ii.  Jody Burwell

Although Jody Burwell is not a named party, the record demonstrates that he received constitutionally adequate notice and opportunity to be heard.  *See Mullane*, 339 U.S. at 314.

As to notice, on February 12, 2025, Defendant Alum's former counsel served the *Motion to Withdraw as Counsel* (Doc. 75)—which twice warned that the LLC could not proceed without

33

counsel, Doc. 75 at 2, 7—on Joe Burwell at 555 Anton Blvd., 1-3 Fl., Costa Mesa, CA 92626.

Doc. 76 at 4.  On April 30, 2025, Plaintiff served Jody Burwell with notice of the Final Judgment

(Doc. 82) at 1713 Heritage Ave., Placentia, CA 92870.  Doc. 83 at 1-2 ¶ 4.  The Final Judgment

expressly warned that "upon failing to perform, an Order to [Show] Cause shall be entered

requiring one of the members of the LLC to appear in person before the Court or be held in

contempt of Court."  Doc. 82 at 1.  The Court then mailed copies of the *Order Setting In-Person*

*Motion Hearing* (Doc. 85) and the *Motion for Order to Show Cause* (Doc. 83) to Jody Burwell at

the same Placentia address.  Doc. 85 at 1-2.  The Court received a signed return receipt from that

address on October 3, 2025.  Doc. 90.  Although the return receipt bears the name and signature

of "Sandra Ortiz," whose relationship to this case and/or Jody Burwell is presently unknown to

the Court, Jody Burwell subsequently confirmed the Placentia address as being his address in the

*Emergency Pro Se Motion*.  *See* Doc. 97 at 2.  On December 8, 2025, Plaintiff served the *Motion*

*for Attorney Fees as a Sanction* (Doc. 99) on Jody Burwell by email at joeburwell@gmail.com.

Doc. 99 at 4.

Moreover, the record reflects that Jody Burwell was in direct communication with

Plaintiff's counsel as early as October 5, 2025, *see* Doc. 99 at 8 (billing entry for "[r]eviewing

communication under R408 from J Burwell"), demonstrating his actual knowledge of these

proceedings.  The billing entries also reflect communications between Jody Burwell and

Plaintiff's counsel on or about October 7, 2025, *see id.* ("[F]ollow up email to Burwell."),

October 28, 2025, *see id.* ("Review and respond to email from Burwell."), October 31, 2025, *see*

*id.* ("Review email from Burwell . . . ."), November 5, 2025, *see id.* at 9 ("Review email with

attached alleged emergency motion.").[9]

---

[9] Even if the billing entries reflect instances of reviewing a previous email, there were clearly ongoing communications during this time nevertheless.  Moreover, it undermines Defendant Alum's contention that "shortly before the

As to opportunity to be heard, Jody Burwell appeared at the November 6, 2025, evidentiary hearing and testified under oath as to his personal knowledge in his individual capacity.  Doc. 98 at 1-2.  Moreover, his interests were represented through Defendant Alum's Response, which specifically addressed the question of personal liability of the LLC's members. *See* Doc. 104 at 5-7.  Due process is therefore satisfied as to Jody Burwell.

### iii.  <u>Andrew Burwell</u>

Although Andrew Burwell is not a named party, the record shows that he received constitutionally adequate notice and opportunity to be heard.  *See Mullane*, 339 U.S. at 314.

As to notice, Andrew Burwell received notice of this enforcement proceeding at the same address consistently listed for him on the LLC's Statements of Information filed with the California Secretary of State.  *See* Doc. 105-1 at 2 (listing Andrew Burwell's address as 1000 S. Coast Dr., Apt. K201, Costa Mesa, CA 92626).  On February 12, 2025, Defendant Alum's former counsel served the *Motion to Withdraw as Counsel* (Doc. 75)—which twice warned that the LLC could not proceed without counsel, Doc. 75 at 2, 7—on Andrew Burwell by mail to 1000 S. Coast Dr., Apt. K201, Costa Mesa, CA 92626, and by email to andrew@leclix.com.  Doc. 76 at 4.  On April 30, 2025,[10] Plaintiff served Andrew Burwell with mailed notice of the Final Judgment (Doc. 82) at the same address.  Doc. 83 at 1-2 ¶ 4.  The Court then directed the Clerk of the Court to mail copies of the Order Setting In-Person Motion Hearing (Doc. 85) and the *Motion for Order to Show Cause* (Doc. 83) to Andrew Burwell at 1000 S. Coast Dr., Apt. K201,

---

Evidentiary Hearing on Plaintiff's Motion to Show Cause, Defendant Alum Financial received notice of the hearing and *immediately acted and responded* to the Court."  Doc. 104 at 3 (citing Doc. 97) (emphasis added).

[10] That same day, Andrew Burwell indirectly confirmed that this remained his address because he filed a Statement of Information, which he electronically signed under the penalty of perjury, for one of his other LLCs, LECLIX LLC, and in doing so, listed his address as 1000 S. Coast Dr., Apt K201, Costa Mesa, CA 92626.  *See St. Louis Baptist Temple, Inc.*, 605 F.2d at 1172 ("[A] court may: . . . take judicial notice, whether requested or not of its own records and files, and facts which are part of its public records." (internal citations omitted)).

Costa Mesa, CA 92626, and directed the United States Marshals Service to personally serve Andrew Burwell at that address.  Doc. 85 at 1-2.

Although the mail sent to Andrew Burwell was returned as undeliverable, Docs. 92, 95, and the summons was returned unexecuted, Doc. 94, the Court finds that the notice provided satisfied due process under the circumstances.  Due process "does not require actual notice," *Jones*, 547 U.S. at 225, but instead requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections," *Mullane*, 339 U.S. at 314.  Here, the notice was sent to the address listed for Andrew Burwell on the LLC's most recent Statement of Information, filed on August 8, 2024, Doc. 105-1 at 2, which was the same address last known to former counsel, *see* Doc. 76 at 4.  If Andrew Burwell did not personally receive copies of these mailings, such non-receipt is attributable to his own conduct—whether by failing to maintain a valid mailing address, by allowing mail to go uncollected, or by otherwise disengaging from obligations he knew existed.  *See Pena v. Bd. of Cnty. Comm'rs for Cnty. of Santa Fe*, No. 21-1095, 2023 WL 1765382, at *2 (D.N.M. Feb. 3, 2023) ("[I]f [the contemnor] did not personally receive copies of the latter three orders, it was due to her unilateral decision to block or ignore the Court's and her counsel's communications.").

As to opportunity to be heard, after counsel entered an appearance for Defendant Alum on January 9, 2026, Doc. 101, the Court *sua sponte* reset the briefing deadlines, Doc. 102, and Defendant Alum filed a Response that addressed the question of personal liability upon its members, *see* Doc. 104 at 2-3, 5-7.  Andrew Burwell's interests were thus represented.  The fact that Andrew Burwell did not appear individually does not transform otherwise adequate notice into a due process violation.  Due process requires the opportunity to present objections, not that

36

the person actually do so.  *See Mullane*, 339 U.S. at 314 (requiring only "*notice reasonably calculated*, under all the circumstances" and "an *opportunity* to present their objections").

### D.  But-For Causation and the Compensatory Award

#### 1.  But-For Causation

Under *Goodyear*, the Court must determine whether the fees sought would not have been incurred but for Defendant Alum's sanctionable conduct.  581 U.S. at 108-10.  Here, the but-for analysis is straightforward.  Had Defendant Alum not authorized entering a settlement agreement knowing it could not or would not honor, continued avoiding its contractual duties, and then ignored the Court's orders enforcing that settlement agreement and requiring Defendant Alum to appear through counsel, then Plaintiff would not have incurred the present fees sought.  Put differently, if Defendant Alum complied with the legally-binding obligation of the Settlement Agreement it authorized in the first place, then there would have been no *Motion to Enforce Settlement Agreement* (Doc. 72), no *Motion for Order to Show Cause* (Doc. 83), no hearing preparation, no evidentiary hearing (Doc. 98), no *Motion for Attorney Fees as a Sanction* (Doc. 99), and no briefing on sanctions (Docs. 100, 104, 105).

#### 2.  Reasonable Attorney's Fees

Having established but-for causation, the Court must also ensure that the fees awarded are reasonable and were actually incurred to ensure that the compensatory award does not, in substance, become a punitive windfall.  *See Goodyear*, 581 U.S. at 108.  The Court therefore turns to the reasonableness of the specific fees sought.

Here, Plaintiff seeks an award of $11,943.90 in attorney's fees.  Doc. 99 at 3.  The total sought derives from $11,040.00 in fees for 28.0 total billable hours—with 26.4 billable hours completed by Robert David Humphreys at $400.00 an hour and 1.6 billable hours completed by

Paul Catalano at $300.00 an hour—plus the New Mexico Gross Receipts Tax rate at 8.1875%.

*See* Doc. 99 at 10.

As discussed below, the Court concludes that an award of $11,467.88 is reasonable.  The

Court's total derives from (and differs from the proposed amounts as italicized) *$10,600* in fees

for *26.9* total billable hours—with *25.3* billable hours completed by Robert David Humphreys at

$400.00 an hour and 1.6 billable hours completed by Paul Catalano at $300.00 an hour—plus the

New Mexico Gross Receipts Tax rate at 8.1875%.

### i.    Reasonable Hourly Rates

"The first step in setting a rate of compensation for the hours reasonably expended is to

determine what lawyers of comparable skill and experience practicing in the area in which the

litigation occurs would charge for their time."  *Case*, 157 F.3d at 1256 (quotation marks and

citation omitted).  Here, the relevant market is the District of New Mexico.

The burden is on Plaintiff, as the fee applicant, "to produce satisfactory evidence—in

addition to the attorney's own affidavits—that the requested rates are in line with those

prevailing in the community for similar services by lawyers of reasonably comparable skill,

experience and reputation.  A rate determined in this way is normally deemed to be reasonable,

and is referred to—for convenience—as the prevailing market rate."  *Blum*, 465 U.S. at 895 n.11.

In support of the hourly rates sought, Plaintiff submitted two declarations.  Doc. 99 at 12-15 (Ex.

B (Declaration of Robert David Humphreys)); Doc. 99 at 16-17 (Ex. C (Declaration of Richard

N. Feferman)).  Defendant Alum did not challenge the hourly rates or submit any rebuttal

evidence to establish the prevailing market rate.  *See generally* Doc. 104.

Pursuant to Mr. Humphreys' own declaration (Doc. 99 at 12-15 (Ex. B)), Mr. Humphreys:

has practiced consumer protection law for slightly more than 30 years, *see* Doc. 99 at 12; is

admitted to practice in New Mexico (2016) and Oklahoma (1987), *id.*; has been admitted (generally or pro hac vice) in multiple federal and state courts, *id.*; participated in dozens of consumer protection trials and settlements, with multiple notable outcomes, *id.* at 12-13; meaningfully contributes to the field (e.g., writing testimony to four state legislative committees and presenting to the National Association of State Consumer Finance), *id.* at 13; serves as a teacher and mentor for multiple national, state, and local associations, *id.* at 13-14; and has received multiple awards, *id.*, including the National Consumer Law Center's 2017 Vern Countryman Award, which is "widely regarded as the preeminent award in Consumer Law," *id.* at 13.

Mr. Humphreys' declaration then discusses the experience of Paul Catalano, who: has practiced law in Oklahoma for 17 years; is admitted (generally and pro hac vice) to multiple federal courts and one state court; has been recognized in Oklahoma as a "Rising Star" in consumer litigation; and has conducted continuing legal education seminars in multiple county bar associations. *Id.* at 14 ¶ 4.

In addition to discussing the experience and credentials of him and Mr. Catalano, Mr. Humphreys further explained that he:

> [B]elieve[s] the hourly rates requested are justified here, not only market rates for the experience of Plaintiffs' counsel, but also to incentivize private attorneys in New Mexico to provide representation to consumers who have been harmed by businesses engaged in deceptive practices. Further an award of hourly attorney fees against the LLC members will potentially disincentivize the predatory use of a Limited Liability Company to shield members from the consequences of their unlawful conduct.

*Id.* at 14-15 ¶ 9.

In addition to his own declaration, Mr. Humphreys' submitted the Declaration of Richard N. Feferman, Doc. 99 at 16-17 (Ex. C), a shareholder at Feferman, Warren & Mattison who has

39

practiced consumer protection law in New Mexico since 1978, *id.* at 16 ¶ 2, and himself charges $425.00 per hour, *id.* at 17 ¶ 8. Although the Feferman Declaration was executed on September 7, 2023, *id.* at 17, in connection with a separate proceeding, *see id.* at 16 (listing different case caption), it establishes Mr. Feferman's own rate and his familiarity with prevailing rates in this market, both of which the Court finds probative here. Specifically, the fact that a comparably credentialed practitioner charges more than the rate sought here corroborates, rather than undermines, the reasonableness of Mr. Humphreys' $400.00 rate. *See Blum*, 465 U.S. at 895 n.11 (satisfactory evidence includes evidence that requested rates "are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.").

The Court therefore finds that Plaintiff's evidence of reasonable market rates to be sufficient to support charging $400.00 per hour for Mr. Humphreys' services and $300.00 per hour for Mr. Catalano's services. Moreover, Defendant Alum failed to raise any arguments as to the hourly rates sought and likewise failed to submit any contrary evidence of the prevailing market rate. *See generally* Doc. 104. In such an instance, the Court may properly rely on the unrebutted evidence. *See Blum*, 465 U.S. at 900 ("[R]espondents failed to show that the hourly rates failed to provide a reasonable fee for the quality of representation provided . . . . Absent specific evidence to the contrary, we cannot say that [the] rates [sought] per hour for these three attorneys do not fully reflect the quality of their representation."). Because the Court finds Plaintiff's unrebutted evidence of reasonable market rates to be sufficient, the Court should not use its own knowledge to establish what it thinks is a prevailing rate. *See Case*, 157 F.3d at 1257 ("*Only if* the district court does not have before it adequate evidence of prevailing market rates

may the court, in its discretion, use other relevant factors, including its own knowledge, to establish the rate." (emphasis added)).

### ii. Reasonable Hours Expended

Plaintiff seeks compensation for 28.0 hours of attorney time expended between November 2024 and December 2025 in connection with enforcing the Final Judgment (Doc. 82). Doc. 99 at 3, 5-11. All time entries were contemporaneously recorded in counsel's billing software, and Plaintiff's counsel attested that billing judgment was exercised to exclude unrelated or duplicative time. *Id.* at 14 ¶ 6.

Having independently reviewed the time records, the Court is mostly satisfied that the hours expended are reasonable considering the procedural history of this enforcement effort, which required repeated motion practice, an order to show cause, and a hearing. The Court first takes issue with the charge of 0.60 hours ($240.00) by Mr. Humphreys for "Rework authority and eliminate arguments re corp veil to avoid an unnecessary argument," Doc. 99 at 10, because the present motion raises the issue of piercing the LLC's veil, *see* Doc. 100 at 2-4. The Court therefore deducts 0.6 hours. Second, as later discussed, the Court also reduces a 0.5 entry for duplication. In total, the Court finds 25.3 hours by Mr. Humphreys and 1.6 hours by Mr. Catalano to be reasonable.

Defendant Alum raises several arguments regarding the hours expended, each of which the Court addresses in turn.

First, Defendant Alum argues that the requested fees ($11,943.90) are "disproportionate" to the settlement amount ($12,500). Doc. 104 at 7. This argument, made without any citation to authority, conflates the measure of sanctions with the underlying obligation. The proper measure is the actual fees incurred but for the bad-faith conduct, not the amount of the underlying

41

settlement.  Under *Goodyear*, the question is whether the fees were incurred but for Defendant Alum's sanctionable conduct, not whether they bear some proportional relationship to the settlement amount.  *See* 581 U.S. at 108-10.

Second, Defendant Alum contends that "[a]lthough Plaintiff argues the winding up of the LLC caused her to incur more legal expenses, Plaintiff waited over four years after the business closed in 2021 to incur those legal fees on an invoice from 2025."  Doc. 104 at 7.  This misconstrues Plaintiff's arguments.  The fees at issue were incurred between November 2024 and December 2025 in connection with enforcing the settlement agreement and Final Judgment (Doc. 82).  If Plaintiff were arguing as Defendant Alum contends—that the LLC's wind-down caused her to incur additional fees—the trigger date would relate back to 2021.  But Plaintiff makes no such argument.  The fees were triggered not by the wind-down itself, but by Defendant Alum's decision to enter into a settlement agreement that this Court found valid and enforceable, *see* Docs. 74, 78, and its subsequent failure to honor that agreement—claiming only afterward that the LLC had been wound down and lacked assets to pay, despite its members' knowledge of those very facts at the time they agreed to settle.  *See* Doc. 100 at 3-4.

Third, Defendant Alum argues, without citing any authorities, that entries relating to research on personal liability of LLC members "goes beyond simple enforcement" and "represents an attempt to expand the scope of the litigation rather than directly responding to non-compliance."  Doc. 104 at 7.  The Court disagrees.  Research into personal liability was a necessary and foreseeable consequence of Defendant Alum's own conduct—having wound down the LLC and left it without assets, Jody Burwell and Andrew Burwell made it necessary for Plaintiff's counsel to investigate how to collect the agreed-upon settlement amount.  The

42

approximately 2.5 hours spent on this issue (*see* Doc. 99 at 7, 9) was both reasonable in amount and causally connected to Defendant Alum's conduct.

Fourth, Defendant Alum contends that "many of the time entries relate to internal communications, routine case management, or duplicative efforts that should be excluded under proper billing judgment." Doc. 104 at 7. Defendant Alum does not identify any specific entry on those grounds; the argument is entirely generalized. *See id.* Having reviewed the time records, the Court finds that the entries reflect legitimate work that would ordinarily be billed to a client. The 27.4 total hours expended over the relevant thirteen-month period are not excessive given the procedural history.

Fifth, to the extent Defendant Alum characterizes the time entries as "block-billed," Doc. 104 at 8-9, the Court finds that this characterization, even where accurate, does not warrant a reduction. "Block billing" is the practice of lumping multiple tasks into a single entry of time such that the billing entry does not delineate how hours were allotted to specific tasks. *See Cadena v. Pacesetter Corp.*, 224 F.3d 1203, 1214-15 (10th Cir. 2000). However, there is no per se prohibition on block billing; it is not a definite basis to deny an attorney's fee award request. *Id.* at 1215 (citing *Robinson*, 160 F.3d at 1281). Rather, the question is whether the entries are sufficiently detailed to allow the Court to determine if the hours claimed are reasonable. *See Case*, 157 F.3d at 1250 ("A district court is justified in reducing the reasonable number of hours if the attorney's time records are 'sloppy and imprecise' and fail to *document adequately how he or she utilized large blocks of time*." (quoting *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995)) (emphasis added)).

The Court has carefully reviewed the 41 time entries submitted by Plaintiff. *See generally* Doc. 99 at 5-11. Notably, 18 of these 41 entries contain descriptions listing multiple

discrete tasks, with specific breakdowns allocated to each task within the entry. *See, e.g.*, Doc. 99 at 7 (entry dated 02/13/2025, billing 2.30 hours total, explained and broken down as: "Research liability of members for judgment and sanctions. 1.1 [hours.] Begin draft of motion re personal liability of LLC Members. 1.2 [hours.]"). When the sub-tasks within those 18 entries are counted individually, the time records reflect approximately 64 discrete billing entries. The majority of these 64 entries identify a single task and time allocation. Of these 64 entries, at most 12 could arguably be characterized as block-billed—that is, they describe more than one task without allocating specific time to each:

1) 03/14/2025: 1.40 hours for "Research and draft motion for entry of judgment," Doc. 99 at 7;

2) 06/25/2025: 0.90 hours for "Draft Motion for Order to Show Cause and Proposed Order," *id.*;

3) 09/05/2025: 0.10 hours for "Review and respond to client question re appearance and timing," *id.*;

4) 10/05/2025: 0.50 hours for "Evaluate time records, prepare requested papers," *id.* at 8;

5) 10/07/2025: 0.10 hours for "Review DA email and follow up email to Burwell," *id.*;

6) 10/28/2025: 0.20 hours for "Review and respond to email from Burwell," *id.*;

7) 10/28/2025: 0.50 hours for "Review email from Burwell claiming lack of consent to settlement and claim of LLC being without assets; evaluate settlement file, court order, and judgment," *id.*;

8) 10/29/2025: 0.50 hours (presumably, based on subtracting the other time listed in the other sub-entry from the larger entry's total) for "Evaluate settlement agreement, order enforcing settlement agreement, and judgment and evaluate next steps," *id.*;

9) 10/31/2025: 0.40 hours for "Review email from Burwell; obtain and provide court orders requested, draft email re Hendricks view and further settlement negotiations," *id.*;

10) 11/03/2025: 0.20 hours for "Communicate with DA and client re status of payment and whether hearing will proceed this week," *id.*;

11) 11/07/2025: 0.20 hours for "Review ECF filing from Court, email copy to Burwell," *id.* at 9; and

12) 12/01/2025: 0.30 hours for "Review time charges, begin prep of fee application," *id.*

The entries are sufficiently detailed to permit meaningful review, and the amounts of time billed are modest. These 12 entries total approximately 5.30 hours out of Mr. Humphreys' 26.4 billed hours. Ten of the twelve entries are 0.50 hours or less, and the largest is 1.40 hours. *See* Doc. 99 at 6-10. Because the block-billed entries involve small increments of time, related tasks, and/or sufficient descriptions, "the Court concludes that the use of . . . block billing do[es] not prevent the Court from evaluating the reasonableness of the time expended by [Plaintiff]'s attorneys." *Preitauer*, 741 F. Supp. 3d at 945. The Court has conducted its review and concludes that 11 of these 12 entries are reasonably billed.

***Entries 1, 2, 8, and 12:*** The entries numbered as 1, 2, 8, and 12, above are each part of a single, interrelated task; the response is a natural and immediate consequence of the review. *See Harmer v. Berryhill*, No. 14-cv-408, 2019 WL 488285, at *4 (D. Utah Feb. 7, 2019) (finding that combining time spent drafting and editing was permissible because "such functions are often

45

billed together, and the overall time was not unreasonable."); *Dunn & Fenley, LLC v. Diederich*, No. 10-4038, 2012 WL 359753, at *5 (D. Kan. Feb. 2, 2012) (approving entries involving "logically related tasks, such as researching and outlining a single motion" that did not appear to be attempts to "camouflage" the work performed).  Such entries do not invoke the degree of vagueness underlying courts' discouragement of block-billing.  *See Barker v. GR Inv. Grp. LLC*, No. 23-cv-0332, 2024 WL 5381499, at *2 (D.N.M. July 10, 2024) (reducing a 1.4-hour block-billed entry because "the Court is unable to determine how much time can be credited for preparing the Application for Fees and what appears to be multiple emails between counsel.").

*Entries 3, 5, 6, 9:* The same is true with reviewing and responding to related emails. Therefore, the entries numbered as 3, 5, 6, and 9, above, are sufficient.  Each describes a communication received and the attorney's natural, responsive action.  *See Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983) (counsel "is not required to record in great detail how each minute of his time was expended" but need only "identify the general subject matter of his time expenditures.").

*Entry 10:* Similarly, with respect to the entry numbered as 10, above, it describes communication between Plaintiff's attorneys and Plaintiff addressing two substantively related topics: the status of payment and whether the hearing would proceed that week.  Whether payment had been made bore directly on whether the hearing would go forward; these are not independent subjects improperly combined.  *See id.*  Moreover, requiring separate time entries for each act would produce the same or greater total billing: two entries of 0.10 hours each would equal the 0.20 hours billed here, and could potentially exceed it if rounding were applied to each increment independently.  *See Doe v. McAfee*, No. 13-cv-01287, 2015 WL 4324547, at *6 (D. Colo. July 16, 2015) (observing that separating each email event into a separate billing entry

"has the effect of magnifying the actual time spent on these tasks due to the lack of granularity in a decimal billing system.").

***Entry 11:*** Regarding the entry numbered as 11, above, the Court finds that reviewing an ECF filing from the Court and emailing a copy to the opposing party (in lieu of opposing counsel where there is none) is a single, natural workflow. Forwarding a court filing to a relevant party is the immediate, ministerial completion of reviewing it; no independent professional judgment separates the two acts. *See Hensley*, 461 U.S. at 437 n.12; *see also McAfee*, 2015 WL 4324547, at *6.

***Entry 4:*** With respect to the entry numbered as 4, above, evaluating time records and preparing requested papers are arguably two distinct tasks, but both are sequential steps in the fee application process. Put differently, evaluating the time records is a necessary predicate to preparing the fee papers. At 0.50 hours, the total time is modest, and the entry is sufficiently detailed to permit meaningful review.

***Entry 7:*** The Court will reduce 0.50 hours for the October 28, 2025 entry listed as number 7 above. This entry—reviewing Jody Burwell's email and then evaluating the settlement file, court order, and judgment—appears to overlap with entries numbered above as 6 and 8, in which counsel again evaluated the settlement agreement, the order enforcing it, and the judgment. Because both entries describe reviewing the same set of documents on consecutive days, the Court cannot determine whether the document evaluation in entry 7 represents independent work or duplicates the effort billed in entries 6 and 8. The Court therefore reduces this entry as potentially duplicative. *See Case*, 157 F.3d at 1250.

In conclusion, the Court finds 25.3 hours by Mr. Humphreys and 1.6 hours by Mr. Catalano to be reasonable.  This number reflects the 0.5- and 0.6-hour reductions from Mr. Humphreys' billing entries.

### iii.  Lodestar Calculation

Having found the reasonable hourly rates and reasonable hours expended for each attorney, the Court now applies the lodestar formula.  Multiplying Mr. Humphreys' reasonable rate of $400.00 per hour by his 25.3 reasonable hours (reflecting the Court's 1.1-hour total deduction) yields $10,120.00.  Multiplying Mr. Catalano's reasonable rate of $300.00 per hour by his 1.6 reasonable hours yields $480.00.  The sum produces a lodestar of $10,600.00.  There is generally a "strong presumption" that the lodestar represents a reasonable fee.  *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 546 (2010).  Nothing in the record rebuts that presumption.

To the lodestar the Court adds New Mexico Gross Receipts Tax at the current applicable rate of 8.1875%, which is customarily included in attorney's fees awards in the District of New Mexico.  *O Centro Espirita Beneficente Uniao Do Vegetal in U.S. v. Duke*, 343 F. Supp. 3d 1050, 1101-02 (D.N.M. 2018).  Applying that rate to the $10,600.00 lodestar produces $867.88 in New Mexico Gross Receipts Tax, for a total compensatory award of $11,467.88.

### 3.  Post-Judgment Discovery is Unnecessary

Defendant Alum requests post-judgment discovery under Federal Rule of Civil Procedure 69(a)(2) for "further investigation" into the reasonableness of Plaintiff's fees.  Doc. 104 at 8-9. As Plaintiff correctly states, Rule 69(a)(2) only authorizes discovery by a "judgment creditor" to aid in execution of a judgment; it does not authorize discovery by a judgment debtor for the purpose of challenging a fee request.  *See* FED. R. CIV. P. 69(a)(2) ("[T]he judgment creditor . . . may obtain discovery from any person—including the judgment debtor.").  Defendant Alum cites

no authority supporting the proposition that a judgment debtor may invoke Rule 69(a)(2) to conduct discovery into the opposing party's fee records, and the Court is aware of none.

Moreover, the Court notes the tension between Defendant Alum's argument that the requested fees are "disproportionate" to the settlement amount, Doc. 104 at 7, and its simultaneous request for post-judgment discovery that would, if granted, generate further fees and costs. Even setting aside that tension, the marginal potential utility of the requested discovery does not justify the additional burden it would impose. Defendant Alum has not identified any specific deficiency in the fee records that discovery could cure, nor explained what information it expects to uncover that is not already apparent from the record beyond the vague unsubstantiated claim of block-billing. Indeed, the Court's analysis herein demonstrates that Defendant Alum's failure to meaningfully engage with the billing records was without merit. Under these circumstances, post-judgment discovery would serve only to prolong litigation that has already demanded undue amounts of the Court's and the parties' resources.

For these reasons, Defendant Alum's request for post-judgment discovery should be **DENIED**.

## V.  <u>RECOMMENDATION</u>

For the foregoing reasons, the undersigned **RECOMMENDS** that Plaintiff's *Motion for Attorney Fees as a Sanction* (Doc. 99) be **GRANTED IN PART**. The undersigned specifically recommends that the Court: (1) hold Defendant Alum, Jody Burwell, and Andrew Burwell jointly and severally liable for paying Plaintiff $10,600.00 in attorney's fees and $867.88 in New Mexico Gross Receipts Tax as a compensatory sanction; and (2) require full payment of the $11,467.88 within fourteen (14) days of the Court's order.

The undersigned **FURTHER RECOMMENDS** that Defendant Alum's request for post-judgment discovery, *see* Doc. 104 at 8-9, be **DENIED**.

_____
**JOHN F. ROBBENHAAR**
**United States Magistrate Judge**

---

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**